# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

DILLON MYRICK,

       Plaintiff,

    v.

ADAPTHEALTH LLC; HOME MEDICAL
EXPRESS, INC.,

       Defendants.

Case No. 6:22-cv-484-JDK

Hon. Jeremy D. Kernodle

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Clayton L. Falls
Texas State Bar No. 24047546
clayton.falls@klgates.com
1717 Main Street, Suite 2800
Dallas, Texas 75201
Telephone: 214-939-4958
Facsimile: 214-939-5849

Joseph C. Wylie II (admitted *pro hac vice*)
Nicole C. Mueller (admitted *pro hac vice*)
**K&L GATES LLP**
70 W. Madison St., Suite 3100
Chicago, IL 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8000
joseph.wylie@klgates.com
nicole.mueller@klgates.com

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

ARGUMENT ........................................................................................................................9

I.  LEGAL STANDARD.................................................................................................9

II.  CLASS CERTIFICATION CANNOT BE COMPLETED PRIOR TO TRIAL ...............10

III.  PLAINTIFF'S CLASS DEFINITION IMPERMISSIBLY DEVIATES FROM
      THE CAUSES OF ACTION PLEADED IN THE COMPLAINT...................................11

IV.  PLAINTIFF HAS NOT MET HIS BURDEN OF ESTABLISHING THE
     ELEMENTS OF RULE 23(A) OR (B)(3) ...................................................................12

      A.  Plaintiff Has Not Met His Burden of Proof for Class Certification......................13

      B.  The Class Cannot be Ascertained Because Class Members Cannot be
          Identified Without Individualized Fact-Finding ...................................................17

      C.  Common Questions Do Not Predominate Over Individual Ones..........................18

      D.  Plaintiff's Claim Is Not Typical...........................................................................19

      E.  Counsel Is Inadequate .........................................................................................21

CONCLUSION.....................................................................................................................22

320805822.17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.A. by & through P.A. v. Phillips*,
No. 21-30580, 2023 WL 334010 (5th Cir. Jan. 20, 2023)................................................10, 17

*Abdallah v. FedEx Corp. Servs., Inc.*,
2021 WL 979143 (N.D. Ill. Mar. 16, 2021)......................................................................19

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974)..........................................................................................................11

*AMP Automotive, LLC v. B F T, LP*,
CV 17-5667, 2017 WL 5466817 (E.D. La. Nov. 14, 2017) ............................................17

*Avant v. S. Cent. Bell Tel. Co.*,
716 F.2d 1083 (5th Cir. 1983) .........................................................................................21

*Bee, Denning, Inc. v. Capital Alliance Group*,
310 F.R.D. 614 (S.D. Cal. Sept. 24, 2015) ......................................................................12

*Bouton v. Ocean Props., Ltd.*,
322 F.R.D. 683 (S.D. Fla. 2017).......................................................................................12

*Burk v. Direct Energy, LP*,
No. 4:19-CV-663, 2021 WL 4267146 (S.D. Tex. Sept. 20, 2021)..................................14, 20

*Chavez v. Plan Benefit Servs., Inc.*,
957 F.3d 542 (5th Cir. 2020) ...........................................................................................18

*In re Citizens Bank, N.A.*,
15 F.4th 607 (3d Cir. 2021) ..............................................................................................10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...........................................................................................................9, 10

*Conrad v. Gen. Motors Acceptance Corp.*,
283 F.R.D. 326 (N.D. Tex. 2012) .....................................................................................13

*Davis v. Cap. One, N.A.*,
No. 1:22-CV-00903, 2023 WL 6964051 (E.D. Va. Oct. 20, 2023)..................................13

*Devillier v. State of Texas*,
No. 3:20-CV-00223, 2023 WL 2744398 (S.D. Tex. Mar. 31, 2023) ...............................11

320805822.17

*E. Texas Motor Freight Sys. Inc. v. Rodriguez*,
    431 U.S. 395 (1977) ............................................................................................21

*Flecha v. Medicredit, Inc.*,
    946 F.3d 762 (5th Cir. 2020) .............................................................................18

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
    695 F.3d 330 (5th Cir. 2012) .............................................................................10

*Gene And Gene LLC v. BioPay LLC*,
    541 F.3d 318 (5th Cir. 2008) .......................................................................13, 20

*Gil v. Pizzarotti, LLC.*,
    No. 1:19-CV-03497-MKV, 2022 WL 970514 (S.D.N.Y. Mar. 31, 2022) .............11

*Hernandez v. Armco Steel Corp.*,
    27 Fed. R. Serv. 2d 1006 (S.D. Tex. 1979) .........................................................21

*Hirsch v. USHealth Advisors, LLC*,
    337 F.R.D. 118 (N.D. Tex. 2020) .......................................................................21

*Krakauer v. Dish Network L.L.C.*,
    311 F.R.D. 384 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019) ................12

*Krakauer v. Dish Network L.L.C.*,
    925 F.3d 643 (4th Cir. 2019) .............................................................................20

*Maffei v. Compass, Inc.*,
    No. CV 21-1072-JFW(MAAx), 2021 U.S. Dist. LEXIS 74100 (C.D. Cal. Apr.
    13, 2021) ..........................................................................................................22

*Martinez v. Adir Int'l LLC*,
    2015 WL 12670519 (C.D. Cal. July 7, 2015) .....................................................19

*Morgan v. Orlando Health Inc.*,
    No. 6:17-CV-1972-CEM-GJK, 2021 WL 12100347 (M.D. Fla. Dec. 8, 2021).....16

*Murphy v. Beaumont Indep. Sch. Dist.*,
    No. 1:22-CV-135, 2024 WL 3405545 (E.D. Tex. July 12, 2024) ..........................13

*Pfeffer v. HSA Retail, Inc.*,
    No. SA-11-CV-959-XR, 2012 WL 1910034 (W.D. Tex. May 24, 2012) ...............17

*Porter v. Collecto, Inc.*,
    No. 1421270CIVMORENOOSUL, 2015 WL 6777601 (S.D. Fla. Nov. 2,
    2015) ................................................................................................................22

-iii-

*Prantil v. Arkema Inc.*,
    986 F.3d 570 (5th Cir. 2021) ...................................................................................14

*Roberts v. Baptist Healthcare Sys., LLC*,
    No. 1:20-CV-00092-MAC, 2022 WL 16702811 (E.D. Tex. Oct. 18, 2022),
    *report and recommendation adopted*, No. 1:20-CV-92, 2022 WL 16701098
    (E.D. Tex. Nov. 2, 2022) ...........................................................................................9

*In re Rodriguez*,
    432 B.R. 671 (Bankr. S.D. Tex. 2010), *aff'd*, 695 F.3d 360 (5th Cir. 2012)..........11

*In the Matter of Rules and Regulations Implementing the Telephone Consumer*
    *Protection Act of 1991*,
    30 F.C.C. Rcd. 7961 (2015) ......................................................................................16

*Shannon v. Allstate Ins. Co.*,
    No. 1:20-CV-448-ADA-ML, 2024 WL 1080915 (W.D. Tex. Jan. 31, 2024) .........18

*Sliwa v. Bright House Networks*,
    LLC, 333 F.R.D. 255 (M.D. Fla. 2019) .....................................................................16

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012) .....................................................................................19

*Taylor v. Delta Cnty.*,
    No. 4:22-CV-00250, 2024 WL 1329909 (E.D. Tex. Mar. 27, 2024) ......................14

*Tex. Grain Storage, Inc. v. Monsanto Co.*,
    No. SA-07-CA-673-OG, 2019 U.S. Dist. LEXIS 149714 (W.D. Tex. June 24,
    2019) ..........................................................................................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)....................................................................................................9

*In re Univ. Gen. Hosp. Sys., Inc.*,
    No. 15-31086-H3-11, 2016 WL 881312 (Bankr. S.D. Tex. Mar. 7, 2016) .............22

*In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*,
    157 Fed. Cl. 189 (2021) ............................................................................................10

*Ward v. Hellerstedt*,
    753 F. App'x 236 (5th Cir. 2018) ........................................................................13, 19

*Woodard v. Andrus*,
    272 F.R.D. 185 (W.D. La. 2010) ..............................................................................11

*Zaragoza v. Union Pac. R.R. Co.*,
    112 F.4th 313 (5th Cir. 2024) ...................................................................................12

**Other Authorities**

47 C.F.R. § 64.1200(c)............................................................................................11

47 C.F.R. § 64.1200(c)(2)........................................................................................15

47 C.F.R. § 64.1200(d) .....................................................................................11, 15

47 C.F.R. § 64.1200(f)(5)........................................................................................16

47 C.F.R. § 64.1200(f)(5)(i).....................................................................................16

320805822.17

Defendants AdaptHealth LLC ("AdaptHealth") and Home Medical Express, Inc. ("Home Medical" and, together with AdaptHealth, "Defendants") respectfully file this Response in Opposition to Plaintiff Dillon Myrick's ("Plaintiff") Motion for Class Certification (the "Motion") [Dkt. 56], and, in support, state as follows:

## INTRODUCTION

As set forth in Defendants' Motion to Strike Plaintiff's Motion for Class Certification (the "Motion to Strike") [Dkt. 57], the Motion should be denied because, as Plaintiff admits, it is impossible to certify a class and complete the notice process before the trial currently set for January 21, 2025. This leads to two possible outcomes: either modify the trial date, or allow the period for class members to opt out to continue past the trial. If the trial date is not moved, it would result in a manifestly unjust process: class members would have the option of opting out of the class after they know the result of the trial, thereby effectively denying Defendants of the ability to shield itself with a verdict in its favor from future claims by class members.

The motion suffers from a second procedural deficiency: Plaintiff presents a class definition that deviates not only from the class definition presented in the original Complaint, but also from the actual cause of action presented in the Complaint. Plaintiff cannot seek certification of a class unrelated to the causes of action pleaded.

Even if the Court reached the merits of Plaintiff's arguments, they are lacking. Defendants do not dispute that calls were placed to the Plaintiff after he requested not to be called. However, this was the result of a unique confluence of events leading to a lack of compliance with Defendants' internal policies, which are specifically designed to automatically prevent calls to patients[1] who make opt-out requests. The process required in order for Defendants to discover

---

[1] Plaintiff incorrectly claims that Defendants purchase phone numbers or "leads" from third party vendors. (Mot. at ¶ 11). This is incorrect. Defendants only place calls to patients with whom Defendants have an existing business

320805822.17

and correct the circumstances surrounding Plaintiff demonstrates the inherently individualized inquiry that would be required to evaluate whether any other person has claims typical of Plaintiff and made an opt-out request that was not honored.

The Motion is also based on a fundamental misunderstanding of Defendants' records and the data produced in this litigation, resulting in Plaintiff's incorrect assertion that a putative class of approximately 17,000 individuals should be certified. The Motion assumes that a call to a phone number associated with a patient designated as "do not call" in Defendants' records was made to that patient. But there are several reasons why a call to such a phone number would not be to the person who made such a request. First, telephone numbers are frequently reassigned, and a telephone number that had been assigned to one of Defendants' patients (who opted out) may have been reassigned to a new patient who separately established a business relationship using the reassigned number. Second, multiple members of the same household may separately have given the same phone number to Defendants, but only one household member made an opt-out request. And finally, there are instances in which a patient has not made an opt-out request but whose account was designated do-not-call because, due to technical limitations of Defendants' software, Defendants had to create a new account for the patient, and designated the old one as do-not-call. Plaintiff's claim that Defendants did not keep "accurate internal do-not-call records" is incorrect. On an individual-by-individual basis, Defendants are able to determine whether a patient made a do-not-call request, and if that request was honored. While Plaintiff may be frustrated that Defendants' record-keeping does not lend itself to class discovery, Plaintiff does not demonstrate that Defendants failed to keep the records required by the TCPA.

---

relationship. *See* Ex. 1, Declaration of Matthew Cox in Support of Defendants' Response in Opposition to the Motion (the "Cox Decl."), ¶¶ 5-6.

Finally, the Motion should be denied because Plaintiff's counsel is inadequate.  Courts have held that a plaintiff's delay in bringing a motion for class certification can demonstrate inadequacy of representation.  This is even more true here, where Plaintiff's counsel did not take a single fact or expert deposition, and did not seek discovery required to identify and give notice to the putative class.

## FACTUAL BACKGROUND

In order to ensure that AdaptHealth's patients are able to maintain their Continuous Positive Airway Pressure ("CPAP") machines in proper working order, AdaptHealth contacts patients who have not reordered parts on the CPAP machine manufacturer's recommended schedule and/or who are approaching eligibility to reorder parts based on their insurance carrier's policies to see if they would like to place an order.  Cox Decl. at ¶ 4.  This contact can occur through outbound calls placed to patients by AdaptHealth's patient service centers.  *Id.*  Defendants do not purchase "lead" lists, and only place calls to patients with whom they have an existing relationship.  *Id.* at ¶ 6.

AdaptHealth uses a software platform called SNAP, provided by third party Brightree, to manage its patient relationships.  *Id.* at ¶ 7.  Each patient has an account in SNAP that contains information specific to that patient, such as name, address, and phone number.  *Id.*  Each patient account has a patient ID number and a "SNAP Site" (i.e., the specific database in which the account record is located).  *Id.*  A patient may be moved between SNAP Sites as a result of a change in the business unit responsible for the patient's CPAP resupply.  *See id.* at ¶¶ 7, 13.  Patient ID numbers are not unique, meaning that two different patients who are located in two different SNAP databases can have the same Patient ID number.  *Id.* at ¶ 20.  The SNAP patient accounts have the

capacity to record a patient account as "inactive." *Id.* at ¶ 8.  There are a number of reasons why a patient account might be designated inactive.  *Id.*

A patient account may be placed in an inactive status due to a patient's request not to be contacted by telephone.  *Id.* at ¶ 9.  Prior to November 2023, AdaptHealth patient representatives were instructed to use the disposition "On Do Not Call List" for instances in which patients requested not to be called.  *Id.*  In November 2023, that disposition was renamed "Legacy On Do Not Call List [DO NOT USE]."  *Id.*  At that time, a new attribute in SNAP accounts was created to designate an account "PATIENTDONOTCALLFORSALES."  *Id.*  All existing accounts with the inactive designation of "On Do Not Call List" were also designated "PATIENTDONOTCALLFORSALES."  *Id.*  Calls designated either "On Do Not Call List" or "PATIENTDONOTCALLFORSALES" are not included in call lists.  *Id.* at ¶ 11.

There are several reasons why a phone number might receive calls despite it being associated with a do-not-call account.  *See id.* at ¶¶ 8-10,13.  For example, the same patient can have multiple accounts.  *Id.* at ¶¶ 13-15.  Because of limitations in SNAP functionality, changing a SNAP Site for a patient requires creating a new account for the patient in SNAP, with a new account number; on occasion, the old account would be designated do-not-call to avoid the patient receiving multiple calls.  *Id.* at ¶ 13.  Second, in some instances, a phone number associated with an account with a do-not-call disposition was also associated with an account that was not in an inactive disposition.  *Id.* at ¶15.  This can occur in two different ways.  *Id.* Multiple household members may provide the same phone number or phone numbers to AdaptHealth; thus, when a member of the household makes a do not call request, that patient's account is placed in an inactive account status, but accounts for any remaining household member(s) will remain active.  *Id.*  A patient could also have provided a reassigned number previously associated with an account

4

designated do-not-call.  *Id.* at ¶ 17.[2]  Through manual investigation, AdaptHealth has located instances of each of these scenarios in its records.  *Id.* at ¶¶ 12-19.

AdaptHealth has investigated Mr. Myrick's claims.  *Id.* at ¶ 21.  It appears that on March 8, 2022, Mr. Myrick received a call, and requested not to be called again.  *Id.* at ¶ 23.  At the time, as a result of having been transferred from one AdaptHealth division to another, Mr. Myrick had two active accounts.  *Id.* at ¶ 22.  This was contrary to AdaptHealth policy.  *Id.* at ¶ 23.  Under that policy, the AdaptHealth representative who created Mr. Myrick's new account should have designated his old account as inactive.  On March 8, 2022, Mr. Myrick's opt-out request was properly recorded in his old account.  However, it was not recorded in his new account, and he continued to receive calls because, due to human error, his new account was never designated as either "On Do Not Call List" or "PATIENTDONOTCALLFORSALES."  *Id.* at ¶¶ 22, 24.

In order to attempt to demonstrate that no calls were made to patients who requested not to receive calls, AdaptHealth undertook an analysis of its patient records and call center data.  This effort was complicated by the fact that patient records and call center data are stored in two different systems.  *See* Ex. 2, Declaration of Jeffrey Jackson in Support of Defendants' Response in Opposition to the Motion (the "Jackson Decl."); Ex. 3, Declaration of William Lewis in Support of Defendants' Response in Opposition to the Motion (the "Lewis Decl.").  A crucial limitation of the the call system prevents a simple review of the call logs to determine to which patient any particular call was placed: the call logs do not include patient name, SNAP Site, or patient ID number.  Lewis Decl. at ¶ 2-3.  In other words, the call logs identify which *phone number* was called, but not which *patient*.  *Id.*  In an attempt to work around this problem, AdaptHealth provided the following sets of records:

---

[2] As recently as 2018, an estimated 35 million phone numbers were reassigned each year.  In the matter of Advanced Methods to Target and Eliminate Unlawful Robocalls, FCC 18-177.

- A list of all accounts with an inactive reason of "Legacy On Do Not Call List [DO NOT USE]" or "Patient requested," or the PATIENTDONOTCALLFORSALES attribute, including their names, phone numbers, and patient ID numbers/SNAP Sites (the "Do-Not-Call List").  Jackson Decl. ¶ 3.
- A list of all calls made to any phone number associated with any patient in the Do-Not-Call List (the "Call Logs").  The database from which the Call Logs were generated, which is separate from the database from which the Do-Not-Call List was generated, does not contain names, or patient ID number/SNAP Site information, for any call.  Lewis Decl. ¶ 3.[3]
- A list of accounts not on the Do-Not-Call List that shared phone numbers with accounts on the Do-Not-Call List (the "Analysis File").  Jackson Decl. ¶ 4.

Notably, this process did not and cannot locate anyone who may have a claim similar to Plaintiff's (an opt-out request that was not honored because it was not properly recorded).

Plaintiff's expert conducted an analysis limited to attempting to determine whether a phone number associated with an account number on the Do-Not-Call List received a phone call after the date on which the account was designated do-not-call.  This rudimentary analysis is flawed.  Mr. Woolfson assumed that patient ID numbers were unique identifiers, without recognizing that the same patient ID number could be used for different patients in different SNAP Sites.  *See* Dkt. 56-1, Declaration of Expert Aaron Woolfson (the "Woolfson Decl."), ¶¶ 34-39.  He assumed that the first opt-out date for any account with the same patient ID number (regardless of SNAP Site) applied to any patient account with the same ID number.  *Id.*  In fact, the example that Mr. Woolfson used to attempt to discredit Defendants' expert's opinion demonstrates this basic error.  Mr. Woolfson claims that two calls were made to a particular account on May 24 and 26, 2023, after the opt-out date of September 1, 2022.  *Id.* at ¶ 39.  However, Mr. Woolfson's own report shows that that patient ID number is associated with three different SNAP Sites, with three

---

[3] Due to a miscommunication, patient names were added to the call logs that were produced.  Those patient names did not come from the call records themselves.  Instead, the AdaptHealth employee who prepared the data for production imported the names from the Do-Not-Call List.  *See* Jackson Decl. at ¶ 4.  As discussed herein, this improperly assumes that a call to a phone number that was associated with a do-not-call patient was placed to that patient, the fundamental error at the heart of the Motion.

6

different "last made inactive" dates.  *Id.*  Two of those last-made-inactive dates are *after* the two calls that Mr. Woolfson claims were made after an opt-out request.  (As explained above, in order to identify unique patients, Mr. Woolfson would have had to look at *both* the patient ID number and the SNAP Site associated with it.)  Those three different accounts each had different SNAP Sites, names, phone numbers, and opt-out dates associated with them.  Cox Decl. at ¶ 7. Jan Kostyun, Defendants' expert, demonstrated how this resulted in Mr. Woofson erroneously concluding that calls were placed to a particular phone number after an account it was associated with was designated as do-not-call.  *See* Ex. 4, Expert Rebuttal Report of Jan Kostyun (the "Kostyun Report"), ¶¶ 54-57.  Mr. Woolfson doubled down in his reply report, describing his erroneous assumption as a "critical step," and chastises Defendants' expert for not making the same basic error he did.  *See* Ex. 5, Declaration of Plaintiff's Expert Aaron Woolfson in Reply to Kostyun Report (the "Woolfson Rebuttal"), ¶ 34.

More fundamentally, Mr. Woolfson completely ignored the possibility that a phone number could be associated with multiple patients or accounts.  In fact, Mr. Woolfson assumed that the Analysis File was simply an extension of the Opt-Out List.  Woolfson Decl. ¶¶ 40-44.  Plaintiff cannot claim not to have known that these were different lists.  In fact, Plaintiff demanded that Defendants produce "any additional call log data necessary to determine alleged duplicates on the internal do-not-call log."  Dkt. 47 at ¶ 5.  And as discussed below, this question featured heavily in Defendants' expert's report.  Despite this, Mr. Woolfson's rebuttal report is entirely silent on this issue.  In other words, Plaintiff does not challenge either the necessity to control for duplicate accounts, or the manner in which Defendants' expert performed that control.

Defendants engaged Jan Kostyun, a leading expert in call records analysis.  *See* Kostyun Report, ¶¶ 4-11, Ex. A.  Mr. Kostyun described the Analysis File in his report, stating that the "file

did not represent DNC records, but rather identified telephone numbers that appear in AdaptHealth's records that are associated with more than one patient account." *See id.* at ¶ 21. Mr. Kostyun further described the process that he used to control for the presence of the same telephone number in multiple accounts. *Id.* at 67-73.  Mr. Kostyun was able to determine, by comparing the Do-Not-Call List and the Analysis File, that there are only 501 accounts that cannot be explained by the existence of multiple accounts. *Id.* at ¶ 80.  This comparison between the Do-Not-Call List and the Analysis File was necessary because, as described above, the Call Logs do not contain names or patient ID number/SNAP Site information.

Contrary to Plaintiff's contention that "Kostyun's report . . . still admits the records show AdaptHealth called consumers after they were placed on the IDNC Registry" (Mot. at ¶ 13), manual investigation of Defendants' records is required to determine whether any of the patients among the remaining 501 accounts actually received a call after opting out.  This is due to a limitation in the SNAP database that limits AdaptHealth's ability to conduct a mass search for phone numbers across all patient records.  However, it is possible to do a manual search for individual phone numbers in patient records.  Jackson Decl. at ¶ 5. Those patient records include information on each call placed to the patient; however, there is no way to search and produce call information from the patient records on any basis other than to search phone numbers individually. Cox Decl. at ¶ 19.  An AdaptHealth officer searched for one of the 501 accounts that could not be explained through Mr. Kostyun's methodology, and was able to determine that it was in fact associated with multiple AdaptHealth accounts at the same household even though it did not appear on the Analysis File.  Cox Decl. at ¶ 19.

320805822.17

## ARGUMENT

## I.     LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted).  Rule 23 requires a plaintiff to "'be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  "Such an analysis will frequently entail "'overlap with the merits of the plaintiff's underlying claim' . . . because 'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* at 33–34 (quoting *Dukes*, 564 U.S. at 351).

Plaintiff must "also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* at 33.  Where, as here, a plaintiff seeks certification under Rule 23(b)(3), he or she must show that questions of law or fact common to the class members predominate over any questions affecting only individual members, meaning that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092-MAC, 2022 WL 16702811, at *7 (E.D. Tex. Oct. 18, 2022), *report and recommendation adopted*, No. 1:20-CV-92, 2022 WL 16701098 (E.D. Tex. Nov. 2, 2022) (internal quotations omitted)

(quoting *Bouaphakeo*, 577 U.S. at 453).  "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast*, 569 U.S. at 34 (citation omitted) "The predominance inquiry requires courts "to consider 'how a trial on the merits would be conducted if a class were certified."  *Id.* (citations and internal quotations omitted) (affirming a district court's denial of class certification).

Moreover, the calculation of damages must be based on a model applicable to all members of the class.  *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 350 n.16 (5th Cir. 2012). In addition to Rule 23's explicit requirements, the Court must be satisfied that the proposed class is ascertainable.  *A.A. by & through P.A. v. Phillips*, No. 21-30580, 2023 WL 334010, at *2 (5th Cir. Jan. 20, 2023).

## II.    <u>CLASS CERTIFICATION CANNOT BE COMPLETED PRIOR TO TRIAL</u>

As noted in the Motion to Strike, and as Plaintiff now agrees, the class certification process cannot be completed by January 21, 2025.  *See* Dkt. 57 at 4-5; Dkt. 59 at 4.  As the Court already has ruled, good cause does not exist to modify the trial date.  Dkt. 55 at 1 ("Plaintiff has not demonstrated good cause to amend the schedule. This case has been pending for almost two years, and the parties have had more than fourteen months to conduct discovery.").

This is reason enough to deny the Motion.  *See In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 157 Fed. Cl. 189, 195, 197 (2021) ( "the late timing of plaintiffs' class certification motion counsels against certifying a class at this stage of the litigation."); *see In re Citizens Bank, N.A.*, 15 F.4th 607, 618–19 (3d Cir. 2021) ("[a]lthough our Court and three other Circuits . . . have occasionally blessed a trial-before-certification approach, we have cabined it to cases in which the defendant consents . . . [a]t all events, no Court of Appeals has approved foisting trial-before-certification on an unwilling Rule 23(b)(3) defendant.") (citation omitted); *see*

*Devillier v. State of Texas*, No. 3:20-CV-00223, 2023 WL 2744398, at *3 (S.D. Tex. Mar. 31, 2023) ("[t]he parties should have the class certification issues decided in advance of trial").[4]

Plaintiff also fails to present a notice plan. *See Gil v. Pizzarotti, LLC.*, No. 1:19-CV-03497-MKV, 2022 WL 970514, at *7 (S.D.N.Y. Mar. 31, 2022) (holding that "[t]he Court will not certify a class action lawsuit, and risk binding parties to a judgment in a case of which they are unaware" where a plaintiffs' notice plan was deficient and thus, "[p]laintiffs' Motion to certify a Rule 23 Class is denied for this independent reason."); *accord Woodard v. Andru*s, 272 F.R.D. 185, 205 (W.D. La. 2010) ("[B]ecause plaintiffs do not provide a workable notice plan, the Court finds that plaintiffs have not satisfied the superiority prong of Rule 23(b)(3).").

## III.   PLAINTIFF'S CLASS DEFINITION IMPERMISSIBLY DEVIATES FROM THE CAUSES OF ACTION PLEADED IN THE COMPLAINT

Plaintiff argues that the class definition can change over time. Mot. at ¶ 18. Plaintiff relies on a sole case for this proposition, *In re Rodriguez*, 432 B.R. 671, 690 (Bankr. S.D. Tex. 2010), *aff'd*, 695 F.3d 360 (5th Cir. 2012). In that case, the Court redefined the class definition for the narrow reason of *excluding* potential class members who would not benefit from injunctive relief. *Id.* at 691. However, the entire legal theory of this case has changed, and does not match either of the theories presented in the Complaint. *See generally*, Plaintiff's Original Class Action Complaint ("Complaint") [Dkt. 1]. Plaintiff does not seek certification of a class relating to Count I (prerecorded calls). Count II is based on allegations that Defendants made calls to individuals who registered their telephone numbers on the National Do Not Call Registry without consent in violation of 47 C.F.R. § 64.1200(c). The Motion instead purports to base liability on 47 C.F.R. §

---

[4] The fact that a class conceivably could be certified before January 21, 2025 does not render these cases inapposite. Because the notice period cannot be completed by that time, the risk of "one-way intervention"—class members can choose whether to opt out after a trial on the merits and avoid the preclusive effect of a judgment in Defendants' favor—still exists. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974) (observing that the 1966 amendments to Rule 23 were specifically designed to eliminate the risk of one-way intervention).

64.1200(d), which requires that callers have internal policies in place to honor do-not-call requests. Both the factual and legal bases of Count II are different from Plaintiff's new theory of liability. *Cf. Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 318 (5th Cir. 2024) ("A class is initially defined by the plaintiffs via their complaint . . . [a]s class actions progress, plaintiffs may expand, narrow, or otherwise refine their action by filing amended pleadings . . . [h]owever, plaintiffs' prerogative to redefine a class does not extend beyond amending their pleadings.") (citations and internal quotations omitted); *see also Bee, Denning, Inc. v. Capital Alliance Group*, 310 F.R.D. 614, 621 (S.D. Cal. Sept. 24, 2015) (refusing to certify class where the proposed class definition "involves an entirely different subsection of the TCPA, and thus raises a new claim for relief not alleged by Plaintiffs in their complaint"); *Bouton v. Ocean Props., Ltd.*, 322 F.R.D. 683, 693-94 (S.D. Fla. 2017) ("Plaintiff cannot, as he attempts to do here, expand the scope of the proposed class at the certification stage to include entities and theories of liability that are not encompassed within the Second Amended Complaint. To do so would amount to an eleventh-hour amendment of the pleadings.").

## IV.   PLAINTIFF HAS NOT MET HIS BURDEN OF ESTABLISHING THE ELEMENTS OF RULE 23(A) OR (B)(3)

As further underscored below, Plaintiff has failed to meet his burden of proof under Rule 23(a) or (b)(3).  Furthermore, Plaintiff inappropriately relies on *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 387, 393 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019), and only on *Krakauer*, for the proposition that some courts have certified classes when a defendant does not have "accurate internal do-not-call records."  *See* Mot. at 1-2, 16.  However, in *Krakauer*, the Court found that defendant's claims of individual issues that prevented class certification were unsubstantiated.  *See id*. at 398–99 (Dish contends that this gives rise to individual issues, but it

12

again provides only a handful of examples supported by unsworn statements in a brief.") (citation omitted).

Unlike in *Krauker*, Defendants have provided evidence highlighting the highly individualized issues that predominate. Numerous courts have held that where an analysis of a defendant's records would require an individualized inquiry into the merits of each putative class member's claim, class certification is inappropriate. *See Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 323 (5th Cir. 2008) (reversing district court's certification of class in TCPA case where defendant demonstrated that its records did not accurately show the presence or absence of consent; *see also Davis v. Cap. One, N.A.*, No. 1:22-CV-00903 (AJT/IDD), 2023 WL 6964051, at *10 (E.D. Va. Oct. 20, 2023) (denying class certification in TCPA case and distinguishing *Krakauer* on the ground that defendant's records could not be used to establish membership in class without individualized inquiry); *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 329–30 (N.D. Tex. 2012) (denying motion for class certification under the TCPA where automated search of defendant's records was insufficient to demonstrate the existence or lack of consent by individual called parties).

## A.  <u>Plaintiff Has Not Met His Burden of Proof for Class Certification</u>

It is Plaintiff's burden to demonstrate that each element of Rule 23(b) and (c)(3) is met. *See Ward v. Hellerstedt*, 753 F. App'x 236, 243 (5th Cir. 2018) ("A party seeking class certification has the burden of establishing that all of Rule 23's requirements are met.") (citing *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016); *Dukes*, 564 U.S. at 350).  Plaintiff's Motion should be rejected on numerous grounds.  The proposed class is not ascertainable, and it further fails under the typicality and commonality prongs due to the highly individualized nature of the claims.  *See Murphy v. Beaumont Indep. Sch. Dist.*, No. 1:22-CV-135, 2024 WL 3405545, at *2 (E.D. Tex. July 12, 2024) ("When determining whether a plaintiff has satisfied Rule 23's requirements, courts

13

are to conduct a '*rigorous analysis'* that may 'entail some overlap with the merits of the plaintiff's underlying claim[s].'") (quotations omitted).

Moreover, where the defendant has presented issues that are not hypothetical, it is plaintiff's burden to show that the issues do not bar class certification. *See Taylor v. Delta Cnty.*, No. 4:22-CV-00250, 2024 WL 1329909, at *3 (E.D. Tex. Mar. 27, 2024) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.") (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996); *Dukes*, 564 U.S. at 350); *see also Prantil v. Arkema Inc.*, 986 F.3d 570, 579 (5th Cir. 2021) ("When considering the propriety of class certification, the district court must respond to the defendants' legitimate protests of individualized issues that could preclude class treatment.") (citations and internal quotations omitted); *accord Burk v. Direct Energy, LP*, No. 4:19-CV-663, 2021 WL 4267146, at *3 (S.D. Tex. Sept. 20, 2021) ("'[T]he plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification.") (citing *Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005)).

As discussed above, the records produced in discovery do not establish that any particular patient received a phone call from Defendants after making a request not to be called. Instead, the records demonstrate only that a) an opt-out request was recorded to an account with a particular phone number, and b) that phone number subsequently received a call. Defendants have shown that they take automated steps to prevent accounts designated as do-not-call from being called, and Defendants are unaware of any failures of these automated steps. Defendants also have shown that calls to a phone number associated with an opt-out account could have been made to other household members or to persons with reassigned numbers, and that an opt-out designation may

14

not reflect an actual opt-out request.   These are not hypotheticals: Defendants have located instances of each of these fact patterns.   Defendant's expert has shown that these fact patterns can rule out all but 501 supposed class members based solely on the information produced in this litigation.   And, as explained above, each of these 501 remaining accounts would require further individualized inquiry before it could be determined whether a violation of the TCPA had occurred, due to limitations in the SNAP System.

Plaintiff cannot solve this issue by claiming that an opt-out by one user of a telephone number operates to revoke consent as to other users who have provided consent.[5]   The TCPA and the regulations promulgated thereunder do not prohibit phone calls to telephone numbers.   Instead, the do-not-call regulations prohibit calls to "residential telephone subscriber[s]" under certain circumstances, such as where the "subscriber" has requested not to be called.   47 C.F.R. § 64.1200(d); *c.f.* 47 C.F.R. § 64.1200(c)(2) (prohibiting calls to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry," not simply to a telephone number on the national do-not-call registry).   It is not a violation of 47 C.F.R. § 64.1200(c)(2) to place a call to a person with who the caller has an "existing business relationship," defined as:

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

---

[5] Note that this argument would not bear on situations in which the same user had multiple accounts, or in which a new patient provided a reassigned number.

47 C.F.R. § 64.1200(f)(5).  "The subscriber's seller-specific do-not-call request, as set forth in paragraph (d)(3) of this section, terminates an established business relationship."  47 C.F.R. § 64.1200(f)(5)(i).  The Federal Communications Commission has clarified that either the actual subscriber or the "customary user" of a telephone number can provide consent.  *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 7999-8000 (2015).  Plaintiff does not cite to any case holding an opt-out request by one user of a phone number operates to revoke consent previously provided by another user of commonly-used telephone number.  Courts have denied class certification in other cases in which complicated questions about whether consent was obtained from a subscriber or from another household member.  *Sliwa v. Bright House Networks*, LLC, 333 F.R.D. 255, 280 (M.D. Fla. 2019) (holding that "[g]iven that the phone numbers at issue in this case were provided to [defendant] by [defendant] customers . . . and because [defendant] provided services to households (often with multiple service users within a household), the Court finds that whether non-customers consented to receive such calls under agency law principles can only be resolved on a case-by-case basis."); *Morgan v. Orlando Health Inc.*, No. 6:17-CV-1972-CEM-GJK, 2021 WL 12100347, at \*6 (M.D. Fla. Dec. 8, 2021) (alteration in original) (citing *Sliwa*).  Plaintiff's own proposed class definition demonstrates the problem:

> All natural persons in the United States who, from December 14, 2018, to the commencement of this litigation, received one or more telephone solicitation calls on their residential or cellular line from Defendant's telemarketing after registering their telephone number with AdaptHealth, LLC or Home Medical Express, Inc.'s Internal Do-Not-Call Registries.

Mot. at 8.  Where there are multiple patients in a single household, how can the Court determine who "received" a call on "their residential or cellular line" without individualized inquiry?

320805822.17

Accordingly, a trial in this matter would degenerate into a multitude of mini-trials to determine, on a call-by-call basis, whether it was actually placed to a person after that person requested not to be called. The requirement for mini-trials defeats class certification, whether considered under the typicality, practicability, or superiority prongs.

### B. The Class Cannot be Ascertained Because Class Members Cannot be Identified Without Individualized Fact-Finding

Plaintiff's Motion ignores the fact that under binding Fifth Circuit precedent, for a class certification to be successful, the class "must be adequately defined and clearly ascertainable." *Phillips*, 2023 WL 334010 at *2 (citations and internal quotations omitted). "[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (citations and internal quotations omitted) (reversing class certification when a term was too vague to identify class members, and hence, the class was unascertainable).

Ascertainability is lacking when the court has to resort to individualized fact-finding. *See Pfeffer v. HSA Retail, Inc*., No. SA-11-CV-959-XR, 2012 WL 1910034, at *3 (W.D. Tex. May 24, 2012) ("A court must be able to identify class members without resorting to 'intensive, individualized factual inquiries.'") (citations omitted). Plaintiff cites *AMP Automotive, LLC v. B F T, LP*, CV 17-5667, 2017 WL 5466817, at *4 (E.D. La. Nov. 14, 2017), to claim that his class is "easily ascertainable." *See* Mot. at 7-8. However, *AMP Automotive, LLC* addresses the standard for pleading a class action, not for establishing that a class should be certified. *See id*. at *5 (denying a defendant's motion to dismiss and/or to strike when plaintiff's class definition was not administratively unfeasible at the pleading stage).

As highlighted above, a mini-trial is required to determine who is a member of the class. Even limiting to "class" to the 501 patients who could not be ruled out by examining the data

produced would still require an individual inquiry into the circumstances surrounding those patients, and others who shared the same phone numbers.

###    C.    Common Questions Do Not Predominate Over Individual Ones

For the same reason, Plaintiff cannot establish that questions common to class members predominate over individualized questions. *See Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 547 (5th Cir. 2020) ("Under *Dukes*—which 'heightened the standards'—'all of the class member's claims [must] depend on a common issue ... whose resolution will resolve an issue that is central to the validity of each one of the class member's claims in one stroke.") (citation omitted). "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Flecha v. Medicredit, Inc*., 946 F.3d 762, 767 (5th Cir. 2020) (internal quotations omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* This analysis entails identifying the "substantive issues that will control the outcome, assessing which issues will predominate," and then determining whether the issues are common to the class. *Shannon v. Allstate Ins. Co.*, No. 1:20-CV-448-ADA-ML, 2024 WL 1080915, at *9 (W.D. Tex. Jan. 31, 2024). "Class certification is appropriate only if those issues can 'be determined on a class-wide basis using class-wide proof.'" *Id*. (quoting *Benavides v. Chicago Title Ins. Co.*, 636 F.3d 699, 701 (5th Cir. 2011)). "Class certification must be denied if the key issues must 'be answered specifically and individually as to each plaintiff[.]'" *Id.* at *9– 10 (denying a motion for class certification when plaintiffs' issues for resolution required "individualized analysis," and plaintiffs' did not show that damages were "capable of resolution on a class-wide basis").

320805822.17

Here, the questions integral to establishing both liability and damages for Plaintiff's TCPA claims can only be answered through individualized inquiry. *See M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) ("[T]he members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant.'") (citation omitted).

### D.  **Plaintiff's Claim Is Not Typical**

Plaintiff's claim is not typical: his " do not call" request was not honored because it was not properly recorded.  In contrast, Plaintiff's purported class consists exclusively of patients whose accounts bear opt-out designations. "[T]he typicality inquiry is not concerned so much with the 'strengths of the named and unnamed plaintiffs' cases' as with the 'similarity of legal and remedial theories behind their claims.'" *Ward v. Hellerstedt*, 753 F. App'x 236, 247 (5th Cir. 2018) (citation omitted).  "Thus, if the claims of the named plaintiffs and putative class members 'arise from a similar course of conduct and share the same legal theory,' typicality will not be defeated by factual differences." *Id.* (citation omitted) (finding that a district court erred with its unsupported conclusion that typicality and adequacy were satisfied).

Plaintiff received phone calls from Defendants after making an opt-out request due to what investigation has shown was a unique set of circumstances. Courts in other TCPA cases have denied class certification where the cause of the plaintiff's claim was unique to that plaintiff. *See, e.g.*, *Abdallah v. FedEx Corp. Servs., Inc.*, 2021 WL 979143, at *6-8 (N.D. Ill. Mar. 16, 2021) (denying motion for class certification on typicality grounds where named plaintiff's "receipt of hundreds of trace calls resulted from a unique problem" and plaintiff "produced no evidence . . . that any other person ever received calls as the result of a similar problem"); *Martinez v. Adir Int'l LLC*, 2015 WL 12670519, at *6 (C.D. Cal. July 7, 2015) (plaintiff failed to typicality requirement

19

where her telephone number "appeared to make its way into [defendant's database] by a fluke accident" and therefore the "issues and facts surrounding [her] claims [were] unique").

The difference between the claims of Plaintiff and the putative class does not simply bear on liability: claims under 227(c) of the TCPA are entitled to damages of up to $500, with the amount of the award depending in part on the culpability of the conduct. *See Krakauer v. Dish Network L.L.C.*, 925 F.3d 643, 649–50 (4th Cir. 2019) (noting the fact-based analysis inherent in awarding damages under Section 227(c)). The conduct that led to Plaintiff getting called (human error in creating his duplicate account and in failing to note his opt-out requests) is different from the conduct that, on Plaintiff's theory, would have led to others getting called despite requesting an opt-out (either an intent to ignore the opt-outs that were recorded in the system, or a computer glitch that somehow allowed calls to opted-out accounts through some unexplained mechanism).[6] *See Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) (reversing class certification and noting that for "violations of § 227(b)(1)(C) of the TCPA . . . the unique facts of each case generally will determine whether certification is proper. This of course means that plaintiffs must advance a viable theory employing generalized proof to establish liability with respect to the class involved."); *see Burk v. Direct Energy, LP*, No. 4:19-CV-663, 2021 WL 4267146, at *5 (S.D. Tex. Sept. 20, 2021) (stating that "[i]n light of the individualized, fact-intensive disputes about consent that already permeate the record, the Court concludes that this case is governed by the Fifth Circuit's *Gene* opinion," and denying a TCPA motion for class certification when the plaintiff could "not show how the Court can use class-wide proof to determine the existence or absence of consent . . . ."); *see Tex. Grain Storage, Inc. v. Monsanto Co.*, No. SA-07-CA-673-OG, 2019 U.S. Dist. LEXIS 149714, at *7,*9 (W.D. Tex. June 24, 2019)

---

[6] As noted above, Defendants' policy is to record and honor opt-out requests, and Defendants are unaware of any technical error that resulted in calls being placed to accounts that reflected opt-out requests.

320805822.17

("A plaintiff's claim is typical, for class certification purposes, if it arises out of the same event, practice, or course of conduct that gives rise to the claims of other class members' claims and is based on the same legal theory.") (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).

### E.    Counsel Is Inadequate

Plaintiff's counsel's failure to timely file a motion for class certification, in conjunction with their failure to seek the discovery required to understand the documents and data produced in this litigation or necessary for class certification and notice, renders them inadequate.  The failure to timely file a motion for class certification has been deemed evidence of inadequacy.  *See E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 404–05 (1977) ("failure to move for class certification prior to trial" deemed to be a "strong indication" of inadequacy) (internal quotations and citation omitted); *see Avant v. S. Cent. Bell Tel. Co.*, 716 F.2d 1083, 1086 (5th Cir. 1983) (affirming denial of class certification where plaintiff "had failed to bring the motion in a timely manner under the local rules of the Court . . . and, in failing to make any motion for certification or seek or offer any evidence to support such certification, had not fairly and adequately protected the interests of the class."); *cf. Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 128 (N.D. Tex. 2020) (counsel's "failure to comply with Local Rule 23.2 does not—*per se*—deem counsel inadequate; instead, it merely 'bears strongly on the adequacy of the representation.'") (quoting *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981)); *accord Hernandez v. Armco Steel Corp.*, 27 Fed. R. Serv. 2d 1006 (S.D. Tex. 1979) ("Plaintiff's attorney's inaction in this case is the antithesis of vigorous and effective representation. The absence of any discovery, as well as the failure to move for class certification . . . convinces this court that the Rule 23(a)(4) requirement of adequate representation has not been met in this case.") (citing *Rodriguez*, 431 U.S. at 405).

21

320805822.17

Plaintiff also failed to conduct a single deposition or to seek discovery required for class notice, which further demonstrates their inadequacy. *See In re Univ. Gen. Hosp. Sys., Inc.*, No. 15-31086-H3-11, 2016 WL 881312, at *4 (Bankr. S.D. Tex. Mar. 7, 2016) ("Plaintiffs' counsel have not exercised reasonable diligence in conducting discovery.  The court concludes that Plaintiffs have not satisfied their burden of proof on the question of adequacy of representation."); *see Maffei v. Compass, Inc.*, No. CV 21-1072-JFW(MAAx), 2021 U.S. Dist. LEXIS 74100, at *3 (C.D. Cal. Apr. 13, 2021) ("[A] plaintiff's failure to timely pursue discovery and timely file the motion for class certification calls into question Plaintiff's ability to adequately protect the interests of the class.") (citations and internal quotations omitted); *Porter v. Collecto, Inc.*, No. 1421270CIVMORENOOSUL, 2015 WL 6777601, at *4 (S.D. Fla. Nov. 2, 2015) (finding that plaintiff's counsel was inadequate when he "fail[ed] to diligently pursue discovery necessary to support the motion for class certification" and violated the Court's scheduling order) (alteration in original) (citing *Troup v. McCart*, 238 F.2d 289, 294 (5th Cir. 1956)).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's motion for class certification and dismiss the class allegations from Plaintiff's complaint.

Dated:  November 1, 2024                          Respectfully submitted,

By:   */s/ Joseph C. Wylie II*
        Joseph C. Wylie II (admitted *pro hac vice*)
        Nicole C. Mueller (admitted *pro hac vice*)
        **K&L GATES LLP**
        70 W. Madison St., Suite 3100
        Chicago, IL 60602
        Telephone: (312) 372-1121
        Facsimile: (312) 827-8000
        joseph.wylie@klgates.com
        nicole.mueller@klgates.com

        Clayton L. Falls

**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-4958
Facsimile: (214) 939-5849
clayton.falls@klgates.com

*Attorneys for Defendants AdaptHealth LLC and*
*Home Medical Express, Inc.*

23

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and served via CM/ECF on all counsel of record on this 1st day of November 2024.

*/s/ Joseph C. Wylie II*
Joseph C. Wylie II