# EXHIBIT 4

## EXPERT REBUTTAL REPORT OF JAN KOSTYUN

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

DILLON MYRICK,
individually and on behalf of all others persons similarly situated,

Plaintiff,

vs.

ADAPTHEALTH, LLC; HOME MEDICAL EXPRESS, INC.

Defendant.

CASE NO. 6:22-cv-484

**EXPERT REBUTTAL REPORT OF JAN KOSTYUN**

**Table of Contents**

# Contents

Introduction ........ 4
Background and Experience ........ 4
Compensation ........ 8
Documents Reviewed ........ 8
Methodology ........ 10
Summary of Opinions ........ 10
Case Background ........ 11
Discussion of Opinions ........ 13
Opinion 1 – The Woolfson Report fails to address either of Plaintiff's proposed classes. ........ 13
Opinion 2 - Woolfson's Waterfall Analysis #2 attempts to identify Internal DNC violations, but incorrectly includes tens of thousands of non-qualifying calls. ........ 17
Waterfall #2 results include some ten thousand duplicate calls, despite Woolfson's claim that he eliminated duplicates ........ 18
Waterfall #2 results include hundreds of overlapping calls to the same number, which is technically impossible ........ 19
Waterfall2 #2 results include calls with a "NULL" value in the call end time ........ 21
Calls with unusually long duration ........ 22
Calls that were placed prior to the earliest DNC date for the given telephone number ........ 24
Calls that were placed to telephone numbers with no DNC record ........ 28
Calls to telephone numbers that are related to multiple patient accounts ........ 29
Calls in Waterfall #2 to telephone numbers with multiple patient accounts ........ 30
Calls remaining in Waterfall #2 after removing those erroneously included by Woolfson ..... 31
Opinion 3 - Woolfson's Waterfall #1 analysis does not serve any apparent purpose, and suffers from numerous severe technical errors. ........ 32
Waterfall #1 results include tens of thousands of duplicate calls, despite Woolfson's claim that he eliminated duplicates ........ 33
Waterfall #1 results include thousands of overlapping calls to the same number, which is technically impossible ........ 33
Waterfall #1 results include thousands of overlapping calls to the same number, which is technically impossible ........ 34
Waterfall #1 results include calls with a "NULL" value in the call end time ........ 34
Calls with unusually long duration ........ 34

Calls that were placed prior to the earliest DNC date for the given telephone number ........... 35
Waterfall #1 also includes more than 1.7 million calls placed to multi-patient telephone numbers ........... 37
Opinion 4 - Woolfson's methodology does not propose any practical means to identify the names and addresses of class members based on class-eligible telephone numbers. ........... 37
Woolfson proposes an unworkable and unproven carrier subpoena process ........... 37
Woolfson fails to address the critical need to identify users instead of subscribers, accommodate family plans, and determine owners of prepaid phones ........... 39
Woolfson's subpoena solution faces severe procedural restrictions........... 42
Woolfson has disclaimed the ability to identify class members ........... 44
Reservation of Right to Amend ........... 45
Exhibit A – Jan Kostyun CV ........... 46
Case Experience: ........... 52
Exhibit B – Deposition excerpt of John Keep ........... 69

## Introduction

1. In this case, Dillon Myrick ("Plaintiff") proposes to represent the following two classes of individuals in a class action against AdaptHealth, LLC ("AdaptHealth") and Home Medical Express, Inc. "Defendants"):

> **"Prerecorded Voice Class":** All individuals in the United State who, in the four years preceding this action: (1) received any solicitation/telemarketing telephone calls or messages made by or on behalf of Defendant; (2) through the use of an artificial or prerecorded voice within the four years prior to the filing of this Action through the date of class certification.

> **"DNC[1] Class":** All individuals in the United State who, in the four years preceding this action: (1) received more than one telephone call made by or on behalf of Defendant within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days. [2]

2. On July 22, 2024, Plaintiff presented the Declaration of Expert Aaron Woolfson ("Woolfson Report").

3. Counsel for AdaptHealth contacted me for the purposes of an engagement as an expert witness for this case, and I have been asked to use my specialized professional knowledge, experience, and expertise to provide opinions in this case, and to analyze and rebut the opinions presented in the Woolfson Report. My opinions about these matters are summarized in this report.

## Background and Experience

4. I am an independent technology consultant with over 35 years of experience covering the areas of telecommunications, enterprise architecture, and information technologies. I

---

[1] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the FCC.

[2] Plaintiff's Original Complaint ("Complaint"), D.E. 1

received both a Bachelor of Science degree (magna cum laude) in Mathematics, as well as a Master of Science degree in Computer Science, from Union College in 1976. I have been directly employed in various capacities by major telecommunications companies, including Bell Telephone Laboratories, GTE, Verizon, and Syniverse Technologies. I have also been engaged as a consultant on various telecommunications issues by telecommunications companies and regulatory authorities, including Rogers Wireless (the largest wireless carrier in Canada), CRC (the national telecommunications regulatory agency of Colombia), and Syniverse Technologies. I have worked at numerous technical levels in software development, database technology, and enterprise architecture. I have worked for over 15 years providing consulting services, software development, and data analysis in the field of telephone number portability. This experience covers landline, wireless, and intermodal (landline-to-wireless or wireless-to-landline) number portability, as well as telephone number pooling. I have played lead roles in the technical and organizational processes of porting landline numbers in the U.S. as well as wireless numbers in the U.S., Canada, and Colombia.

5. As a software architect for Bell Telephone Labs, GTE, Verizon, and Syniverse, I also developed expertise in areas such as landline and wireless number provisioning, including the end-to-end process of establishing service for an initial subscriber; landline and wireless order entry, including the collection of subscriber contact information; initial implementation of the National Do Not Call registry; technical experience with telecom features such as voice calling, SMS messaging, fax transmissions, voicemail, auto dialer and Interactive Voice Response Unit (IVRU) technology, and switching implementations; and a wide variety of telecommunications industry standards.

6. I also have extensive experience in database methodologies, data analysis, and data mining. My experience with database technologies includes hierarchical, network and relational database models and implementations. I have instructed working professionals on the use of database programming, support and internal architecture, and have developed database training courses. I am proficient with advanced database modeling, optimization and query techniques, as well as the development of database software applications. I have personally performed database queries and data analysis against hundreds of data stores, including but not limited to Internal and National Do Not Call lists, Wireless Block identifiers, Number Portability transaction lists and telephone call records produced by both wireless carriers and businesses involved in dialing campaigns.

7. I have extensive experience with call center operations and various dialing systems, including those used for inbound and outbound calling campaigns. In my tenure with GTE/Verizon, I performed early research with Intel-based Computer Telephony Interfaces (CTI), including text-to-speech translation and automated dialing interfaces. I have worked closely with IVRU engineers and application architects to develop programmatic interfaces used for inbound and outbound calling. I have worked closely with call center personnel at telecom businesses such as GTE, Verizon, Syniverse and Rogers Wireless while supporting Customer Relations Management (CRM) applications that include interfaces to inbound and outbound dialing systems. I have analyzed dialing systems and features from vendors such as Avaya, LiveVox, CallFire, RingCentral, Cisco, Five9, Nice-InContact, GTE, Txtwire Technologies, Stratics Networks, InfoLink Technologies, Interactive Intelligence, Aspect, Chase Data Corp, and TCN, among others.

8. For the past ten years I have worked as a consultant and expert witness on cases covering TCPA issues, patent litigation, software copyright infringement and trade secret misappropriation, software value determination, vandalism, and sabotage of application programs. I have testified both in deposition and in court. My opinions have never been stricken or rejected, and have been cited in support of denial of class certification in multiple TCPA cases.

9. A copy of my curriculum vitae is attached hereto as Exhibit A.

10. I have not authored any publications in the past 10 years.

11. In the past four years, I have been retained to provide Deposition testimony as an expert in the following matters: *Mantha v. QuoteWizard*, No. 1:19-cv-12235 (D. Mass); *Scott v. The Federal Savings Bank*, No. 3:21-cv-00291 (D. Or.); *Witvoet v. Pat Tumilty*, No. 1:22-cv-04236 (N.D. Ill.); *Morris v. Lincare*, No. 8:22-cv-02048 (M.D. Fla.); *Powers v. Receivables Performance Management*, No. 4:18-cv-12125 (D. Mass.); *Perrong v. Matthew Bradford, Cleo Communications*, No. 2:23-cv-00510 (D. Pa.); *Ackerman v. Look Both Ways Insurance*, No. 4:23-cv-00061 (D. Va.); *Settle v. Senior Choice Plans*, No. 1:23-cv-01063 (S.D. Ind.); *Gurzi v. Penn Credit*, No. 6:19-cv-00823 (M.D. Fla.); *Lalli v. First Team Real Estate*, No. 8:20-cv-00027 (C.D. Cal.); *Rechul v. Crisp Marketing*, No. 0:20-cv-61042 (S.D. Fla.); *Turner v. USAA Savings Bank*, No. 3:20-cv-3004 (W.D. Ark.); *Johansen v. Bluegreen Vacations*, No. 20-cv-81076 (S.D. Fla.); *Gruber v. Yelp*, No. CGC 16-554784 (Cal. Superior); *Clemons v. State Farm*, No. 4:21-cv-00678 (E.D. Mo.); *Rowan v. United Enrollment Services*, No. 9:22-cv-80235 (S.D. Fla.); *Sapuy v. Roosevelt Field Mall Dental*, No. 2:21-cv-03222 (E.D. N.Y.); *Rose v. New TSI Holdings*, No. 1:21-cv-05519 (S.D. NY); *Mey v. Matrix*, No. 5:21-cv-00062 (N.D. W.V.); *Anthony v. The Federal Savings Bank*, No. 1:12-cv-2509 (N.D. Ill.); *Baldwin v. HearingPro Inc. and Miracle-Ear Inc.*, No. 0:20-cv-1502 (D. Minn.); *Burk v. Direct Energy*, No. 4:19-cv-663 (S.D. Tex.); *Smith v. USAA*

*Savings*, No. 1:20- cv-1303 (D. Col.); *Virgne v. C.R. England*, No. 1:19-cv-2011 (S.D. Ind.); *Grome v. USAA Savings Bank*, No. 4:19-cv-03080 (D. Neb.); *Hill v. USAA Savings Bank*, No. 01-19-0003-2123 (AAA); *Howerton v. USAA Savings Bank*, No. 01-19-0003-3505 (AAA); *Mancuso v. USAA Savings*, No. 2:20-cv-01656 (D. Nev.); *Rogers v. Navient Solutions*, No. 1:20-cv-00276 (E.D. Va.); *Floyd v. National Payment Systems*, No. 0:20-cv-61042 (N.D. Cal.); *Chinitz v. Realogy Holdings*, et. al., No. 3:19-cv-03309 (N.D. Cal.); *Dickson v. Direct Energy*, No. 5:18- cv-182 (N.D. Oh.); *Samuel v. Adroit Health Group*, No. 1:19-cv-10487 (D. Mass.); *Iverson v. Advanced Disposal Services*, No. 3:18-cv00867 (M.D. Fla.); *Charvat v. The Southard Corporation*, No. 2:18-cv-190 (S.D. Ohio); *Palmer v. KCI*, No. 4:19-cv-3084 (D. Neb.); Quintana v. BB&T, No. 1:18-cv-00748 (M.D. N.C.); *Saunders v. Dyck O'Neal*, No.1:17-cv-00335 (W.D. Mich.); *Wang v. Wells Fargo*, No. 1:16-cv-11223 (N.D. Ill.); *Wijesinha v. Bluegreen Vacations*, No. 1:19-cv-20073 (S.D. Fla). I have not provided any trial testimony in the past four years.

**Compensation**

12. I am being compensated at the rate of $400 per hour for my study and analysis in this case, as well as $300 per hour for travel and $600 per hour for testimony[3]. My compensation is not dependent on the outcome of this matter.

**Documents Reviewed**

13. In forming my opinions, I have reviewed the following documents: Plaintiff's original Class Action Complaint (D.E. 1 "Complaint"); ADAPT_0000098.PPTX; ADAPT_0000190.PPTX; ADAPT_0000218.XLSX; ADAPT_0000219.XLSX; ADAPT_0000220.CSV; ADAPT_0000221.CSV; ADAPT_0000222.CSV;

[3] Payment for Deposition Testimony is due at the date and time of the deposition.

ADAPT_0000223.CSV; ADAPT_0000224.CSV; ADAPT_0000225.CSV; ADAPT_0000226.XLSX; ADAPT_0000227.CSV; ADAPT_0000228.CSV; ADAPT_0000088.XLSX; ADAPT_0000089.XLSX; ADAPT_0000090.XLSX; ADAPT_0000091.XLSX; ADAPT_0000092.XLSX; ADAPT_0000093.XLSX; ADAPT_0000094.XLSX; ADAPT_0000095.XLSX; ADAPT_0000096.XLSX; ADAPT_0000097.XLSX; Defendant's Answer with Affirmative Defenses to the First Cause of Action of Plaintiff's Original Class Action Complaint; D.E. 7, Plaintiff's Responses to Defendants' First Set of Requests for Production of Documents, Declaration of Aaron Woolfson, and Exhibits; waterfall1_part1of4.txt; waterfall2_part2of4.txt; waterfall3_part3of4.txt; waterfall4_part4of4.txt; waterfall2.txt; AdaptHealth_waterfall1_msSql2k22.bak; AdaptHealth_waterfall2_msSql2k22[4]. I also participated in an online interview with personnel from AdaptHealth.

14. It is my practice to regularly research and follow developments in the telecommunications industry. This ongoing research includes, but is not limited to: review of significant FCC orders; review of TCPA cases and rulings; routine communication with former telecom associates; comparison of opinions set forth by other TCPA experts; communication with vendors who provide TCPA-related data services; regular review of industry blogs and user groups, such as the Association of Credit and Collections Professionals (ACA International);

[4] After receipt of the Woolfson Report, it was requested via counsel for Woolfson to produce his data results for Waterfall #1 and Waterfall #2. Those results were received approximately one week after issuance of the Woolfson Report. The Waterfall #1 and #2 data was produced both as text files (waterfall1_part1of4.txt, waterfall2_part2of4.txt, waterfall3_part3of4.txt, waterfall4_part4of4.txt, waterfall2.txt) and apparently as database backup files (AdaptHealth_waterfall1_msSql2k22.bak and AdaptHealth_waterfall2_msSql2k22). I was unable to use the database backup files because they were produced with a database version that was incompatible with the version of my database. However, I was able to import the waterfall #1 and #2 text files into a database for analysis purposes.

review of news feeds from organizations such as the Bates Group, Neustar, LexisNexis, TransUnion, and other vendors in the telecom field; and regular research into statistics and trends related to the telecommunications industry. This review and research have also informed and supported my opinions.

## Methodology

15. The methodology that I have employed in producing my opinions in this report is based on my business experience in telecommunications, my experience as an expert with other TCPA-related cases, my education and training, and my review of documents and data relevant to this case, as cited above and throughout this report. Based on my experience and that review, I developed hypotheses regarding the methods used by Plaintiff's expert Woolfson to identify Plaintiff's classes. Those hypotheses are fundamental foundations of each of the opinions that I will detail in this report. I have tested and confirmed my hypotheses using a combination of related documentation, research, data analysis, and experience - similar to the techniques that I have used during my career as a telecommunications system architect. I have analyzed the results of my analysis and testing, and used the results of that analysis to form my opinions and document them in this report.

## Summary of Opinions

16. Based on my business experience in telecommunications and data analysis; my review of available evidence presented for this case; and my prior experience with similar TCPA cases; it is my opinion that:

1. The Woolfson Report fails to address either of Plaintiff's proposed classes
2. Woolfson's Waterfall Analysis #2 attempts to identify Internal DNC violations, but incorrectly includes tens of thousands of non-qualifying calls.
3. Woolfson's Waterfall #1 analysis does not serve any apparent purpose, and suffers from numerous severe technical errors.
4. Woolfson's methodology does not propose any practical means to identify the names and addresses of class members based on class-eligible telephone numbers.

**Case Background**

17. AdaptHealth has produced multiple sets of call records and Do Not Call ("DNC") records in the instant case. The original set of call records produced included the nine files ADAPT_0000088 through ADAPT_0000096. A subsequent set of call records were produced which included the six files ADAPT_0000220 through ADAPT_0000225. My analysis was performed using the combined sets of call logs, ADAPT_0000088-96, and ADAPT_0000220-225.

18. The ADAPT_0000088-96, and 220-225 call records include several identifying fields, the primary one being the *DNIS* field indicating the telephone number that was called. The call records from the first production (ADAPT_0000088-96) also include *Patient_ID*, *Patient_First_Name*, and *Patient_Last_Name* fields. However, I understand that those fields were added after the call records were created, and cannot be used to reliable identify the individual patient to whom any call was intended. Call records from the second production (ADAPT_0000220-225) include a *name* field, but it is also my understanding (based on my interview of AdaptHealth personnel) that the *name* field was added after the call records were created, and cannot be used to reliably identify the individual patient to whom any call was

intended. Accordingly, the call records that were produced can only identify the specific telephone number to which any call was intended.

19. It is my understanding that the call records produced were all based on calls that were monitored by live agents. The call records do not provide a call disposition, which could indicate the result of the call. However, it is my understanding that any specific call record could represent any of several call outcomes, including: calls that were answered, and involved a live discussion between an agent and a patient; calls that were unanswered or not completed; calls that were answered by voicemail, in which a live message was left by a live agent; and calls that were answered by voicemail, in which a message was left by the dialing system.

20. AdaptHealth produced the original DNC file as ADAPT_0000097. The subsequent DNC file ADAPT_0000219 was produced, which I understand replaced the original ADAPT_0000097. A subsequent DNC file was produced as ADAPT_0000227, to augment ADAPT_0000219. I analyzed ADAPT_0000219 and ADAPT_0000227, and found them to contain exactly the same telephone numbers, and exactly the same DNC dates and directives. As such, I chose to perform all of my DNC analysis using ADAPT_0000227.

21. And AdaptHealth produced an original patient analysis file ADAPT_0000218. This file did not represent DNC records, but rather identified telephone numbers that appear in AdaptHealth's records that are associated with more than one patient account. A subsequent patient analysis file was produced as ADAPT_0000228, which replaced the original patient analysis file. The patient analysis that I performed – identification of telephone numbers associated with more than one patient account – was achieved using the ADAPT_0000228 file.

## Discussion of Opinions

**Opinion 1 – The Woolfson Report fails to address either of Plaintiff's proposed classes.**

22. The Woolfson Report identifies two sets of data analysis performed by Plaintiff's expert. The first set, identified as Waterfall Analysis #1, purports to identify "two or more outbound calls within 365 days to number to which the two or more calls were placed fifteen (15) days or longer after the initial outbound call" (Woolfson Report ¶¶ 36-39). The second set, identified as Waterfall Analysis #2, purports to identify "two or more outbound calls within 365 days to number to which the two or more calls were placed fifteen (15) days or longer after the initial tagging of "inactive" date on the record for that particular number" (Id. ¶¶ 40-44).

23. However, Plaintiff has proposed two TCPA classes as follows:

> **"Prerecorded Voice Class":** All individuals in the United State who, in the four years preceding this action: (1) received any solicitation/telemarketing telephone calls or messages made by or on behalf of Defendant; (2) through the use of an artificial or prerecorded voice within the four years prior to the filing of this Action through the date of class certification.
>
> **"DNC Class":** All individuals in the United State who, in the four years preceding this action: (1) received more than one telephone call made by or on behalf of Defendant within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

24. Although Woolfson cites Plaintiff's Class Action Complaint as one of the documents that he relied upon, nowhere in the Woolfson Report is there any reference to either of Plaintiff's proposed classes.

25. Plaintiff's Prerecorded voice class requires the identification of individuals receiving calls using an artificial or prerecorded voice. But the Woolfson Report makes no reference to calls that used a prerecorded voice. Woolfson's methodology - and the process to perform his Waterfall Analyses #1 and #2 – fail to propose any method to identify calls that used an artificial or prerecorded voice. Moreover, there is no data in any of the call records produced

that would indicate any call that used a prerecorded voice, and no other data has been produced or identified by Woolfson that could be used for such identification.

26. Plaintiff's DNC Class requires the identification of individuals who received calls to a telephone number that had been registered with the National Do Not Call Registry ("NDNCR") for at least 30 days. Nowhere in the Woolfson Report is there any reference to calls placed to telephone numbers that were registered on the NDNCR. In fact, the Woolfson Report makes no mention of the NDNCR, no mention of telephone numbers registered, and no mention of the registration process. Moreover, Woolfson's methodology, and the process to perform his Waterfall Analysis #1 and #2, fail to propose any method to identify telephone numbers registered on the NDNCR. There is no data in any of the call records produced or identified by Woolfson that could be used for such identification.

27. And the identification of Plaintiff's DNC class faces numerous technical barriers, none of which are addressed by Woolfson's methodology.

28. To determine violations of the NDNCR, Plaintiff must have access to historical copies of the FTC's Do Not Call Registration, to determine if any given telephone number was registered on the NDNCR on the date it was called, as well as being registered for 30 consecutive days prior to the call. Access to such data is extremely challenging, since the FTC does NOT provide downloads of historical versions of its registration database. Instead, identification of historical registrations requires the use of either third-party vendors, who purport to provide such a service, or the use of home-grown databases that have been downloaded every single day from the FTC during the several year period that covers any potential class(es). Third-party vendors have been shown to be unreliable in the identification of historical registrations, including the identification of registration dates that pre-date the earliest time registrations were accepted on the

NDNCR.[5] And home-grown solutions are also suspect, including missing downloads, and the lack of testing evidence to show that historical registrations can be reliably determined.[6] The Woolfson Report fails to identify any method to identify historical NDNCR registrations, fails to identify whether Plaintiff's 7769 telephone number was registered on the dates of any alleged calls to that number, and fails to identify whether Plaintiff's 7769 number was registered for the 30 consecutive days prior to any alleged calls.

29. Identification of telephone numbers that received calls in violation of the NDNCR also requires a reliable method to identify telephone numbers that were business-related in nature, since business numbers are not eligible for Federal DNC protection. However, the NDNCR cannot prevent business numbers from registering, and such numbers must be filtered from any potential class. Third-party vendors purport to identify business-related telephone numbers, but cannot do so on a historical basis, and regularly fail to identify all business numbers. Subpoenas to telephone carriers may be able to identify business vs. residential telephone accounts, but can never identify telephone numbers on residential accounts that are used for business purposes. It is my experience that painstaking, individualized research is required to identify business-related telephone numbers, and even that process cannot be totally reliable. The Woolfson Report fails to identify any method to identify business-related telephone numbers for the purpose of removing them from Plaintiff's proposed DNC class, and fails to identify whether Plaintiff's 7769 telephone number was a residential number. Indeed, a web search of Plaintiff's 7769 telephone number reveals that

[5] I have personally used a third-party vendor in prior TCPA cases who purports to identify historical registrations from the NDNCR, and found those results to be unreliable.

[6] I have also personally reviewed the use of home-grown databases in prior TCPA cases that purport to identify historical registrations from the NDNCR, and found those results to be unreliable and untested.

the number is, or has been, associated with a business named DayOne Insurance Group, in Tyler TX – located in the same Texas County as Plaintiff.[7] Although Plaintiff asserted in the Complaint that his number was residential, this finding further demonstrates the need for individualized investigation to determine class eligibility.

30. It is my understanding that Plaintiff must identify calls in violation of the DNC as those that were placed to the subscriber who registered that number on the Registry.

31. According to 47 C.F.R. 64.1200(c)(2) prohibits telephone solicitations to:

> A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government

32. This requirement is significant, because the NDNCR is replete with registrations that were created by someone other than the current subscriber or authorized user of the registered number. Telephone numbers may be registered on the NDNCR by the current owner of that number, but the owner may later relinquish that telephone number, without deleting the NDNCR registration. When that number is then re-assigned to a new owner, that owner is in possession of a number that is currently registered on the NDNCR, but was registered by someone else – in this case, a prior owner. In this instance, which is not uncommon, the current owner is NOT "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry", and may not be eligible for protection under the Federal DNC Registry.

33. Furthermore, I am not aware of any reliable method to identify whether any given telephone number was registered on the NDNCR by the same individual who received a call. This

[7] See Better Business Bureau listing for *All State Insurance: Day One Insurance Group – A Sharie Withers Agency*, at https://www.bbb.org/us/tx/tyler/profile/insurance-agency/all-state-insurancee-day-one-insurance-group-a-sharie-withers-agency-1075-28140071 (last visited 8/18/2024)

would require reliable processes to (1) identify if a number was registered on the NDNCR on the date it was called, and also registered for the 30 consecutive days preceding that call; (2) identify the individual who was the authorized user of that number on the date it was called (3) identify the historical date the number was initially registered on the NDNCR, which could have been as much as 21 years ago; (4) identify the individual who registered the number on the NDNCR on that historical date, as far back as 21 years ago[8]; and (5) determine if the individual receiving the call identified in step (2) was the same individual registering the number, as identified in step (4). The Woolfson Report fails to identify any method to identify whether any telephone number in a proposed DNC class was registered by the same individual who received a challenged call to that number, and fails to identify whether Plaintiff's 7769 number was registered by Plaintiff.

**Opinion 2 - Woolfson's Waterfall Analysis #2 attempts to identify Internal DNC violations, but incorrectly includes tens of thousands of non-qualifying calls.**

34. Woolfson's Waterfall Analysis #2 purports to identify "two or more outbound calls within 365 days to number to which the two or more calls were placed fifteen (15) days or longer after the initial tagging of "inactive" date on the record for that particular number" (Woolfson Report. ¶¶ 40-44). The calls identified by Waterfall Analysis #2 do not appear to satisfy either of Plaintiff's proposed classes. As described in Opinion 1, the attempted identification of calls that occurred after an Internal DNC designation – as Woolfson performed for his Waterfall #2 analysis – does not address Plaintiff's Prerecorded Voice Class (which requires the identification of calls placed using an artificial or prerecorded voice), nor does the attempted identification of calls that

[8] The FTC began accepting registrations on the National Do Not Call Registry in June, 2003.

occurred after an Internal DNC designation address Plaintiff's DNC Class, which requires the identification of calls placed to a number after it had been registered on the National Do Not Call Registry.

**Waterfall #2 results include some ten thousand duplicate calls, despite Woolfson's claim that he eliminated duplicates**

35. Woolfson purports to have removed duplicate calls from his analysis results: "I then removed any records where the date and time indicated on the call was less than ten (< 10) minutes from the previous call" (Woolfson Report ¶ 34), accompanied by a footnote that reads "This was done to de-duplicate any call that had been recorded within two or more of the Defendants' production files" (*Id*. fn 15). My analysis revealed that Woolfson's removal of duplicate calls was severely lacking. Indeed, my analysis of the Waterfall #2 results shows that Woolfson failed to remove nearly 10,000 duplicate calls.

36. By searching the Waterfall #2 results for calls with the same telephone number, start date/time, and end date/time, 9,805 sets of duplicate calls were found, where each set of duplicate calls contained two or more calls to the same number. [9]

37. For example, telephone number 301-792-6092 appears in the Waterfall #2 results, with three calls that Woolfson determined to be in violation. However, as seen in Table 1 below, the second and third calls reflect the exact same *conversationid*, start date/time, and end date/time.

[9] Of the 9,805 sets of duplicate calls, there were 8,356 sets of calls with the same telephone number, conversationid (call identifier), conversationstart (date/time call started), and conversationend (date/time call ended). There were also another 1,449 sets of calls with the same telephone number, conversationstart, and conversationend. Even without a matching conversationid, calls to the same telephone number with exactly the same start and end time qualify as duplicates, since a telephone number cannot receive more than one call during the same time period.

| dnis | conversationid | conversationstart | conversationend |
|---|---|---|---|
| tel:+13017926092 | 5b92ac88-bcdd-4b0a-aee6-199b61615a7b | 4/13/2023 13:38 | 4/13/2023 13:40 |
| tel:+13017926092 | ed669656-9f74-41e0-97c3-4f8a9795a305 | 8/9/2023 13:06 | 8/9/2023 13:07 |
| 3017926092 | ed669656-9f74-41e0-97c3-4f8a9795a305 | 8/9/23 1:06 PM | 8/9/23 1:07 PM |

Table 1 – duplicate calls in Waterfall #2 for 301-792-6092

38. In some instances, a single telephone number was reported in Waterfall #2 with multiple sets of duplicate calls. As seen in Table 2 below, telephone number 203-758-3523 appears in Woolfson's Waterfall #2 results with eight calls, but four of those calls are duplicates, leaving only four unique calls.

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+12037583523 | 7de9f028-982c-4ba9-a1e1-41bd4acf3255 | 3/10/2022 15:31 | 3/10/2022 15:32 |
| 2037583523 | 7de9f028-982c-4ba9-a1e1-41bd4acf3255 | 3/10/22 3:31 PM | 3/10/22 3:32 PM |
| tel:+12037583523 | 08e832bf-4c96-4511-85f9-ee2b3dfaadf6 | 3/11/2022 15:25 | 3/11/2022 15:28 |
| 2037583523 | 08e832bf-4c96-4511-85f9-ee2b3dfaadf6 | 3/11/22 3:25 PM | 3/11/22 3:28 PM |
| 2037583523 | 0e455ac5-0873-43ac-978f-75b6f31c6edb | 6/3/22 12:59 PM | 6/3/22 1:02 PM |
| tel:+12037583523 | 0e455ac5-0873-43ac-978f-75b6f31c6edb | 6/3/2022 12:59 | 6/3/2022 13:02 |
| tel:+12037583523 | 4ebdb3db-937f-471f-b3fe-476c45a2c497 | 8/30/2022 14:11 | 8/30/2022 14:17 |
| 2037583523 | 4ebdb3db-937f-471f-b3fe-476c45a2c497 | 8/30/22 2:11 PM | 8/30/22 2:17 PM |

Table 2 – duplicate calls in Waterfall #2 for 203-758-3523

**Waterfall #2 results include hundreds of overlapping calls to the same number, which is technically impossible**

39. My analysis revealed that, besides duplicate calls, Woolfson's Waterfall #2 analysis produced some 300 overlapping calls, in which multiple calls are reported to have been connected to the same telephone number for some portion of each call. For example, Table 3 below reflects the nine calls reported in Waterfall #2 for telephone number 330-864-8546. As seen with the last two calls, one call lasted from 2:51 PM to 3:04 PM on 12/20/2021. The next call appears to have lasted from 3:02 PM to 3:04 PM on the same date., which overlaps with the last two minutes of the previous call. But it is not possible for two calls to be in progress to that same number between 3:02 and 3:04 PM.

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+13308648546 | 2e63ec33-2144-411a-b415-93ae2a0cefab | 10/27/2021 20:40 | 10/27/2021 20:41 |
| tel:+13308648546 | 50b9173f-5c45-4c35-8b79-231ecffafd46 | 10/28/2021 21:04 | 10/28/2021 21:05 |
| tel:+13308648546 | 4e5ebe41-348a-402c-9004-9bc3ecc95ace | 11/10/2021 23:25 | 11/10/2021 23:26 |
| tel:+13308648546 | e6778014-ce92-48e3-86f6-3f6de7e4a483 | 11/12/2021 22:30 | 11/12/2021 22:31 |
| tel:+13308648546 | b65c7993-93aa-4757-ba8f-a64c8f0a09b7 | 11/16/2021 22:11 | 11/16/2021 22:12 |
| tel:+13308648546 | 5a25ed4a-f0c1-44c3-b276-afc27c8cdeb8 | 11/17/2021 22:03 | 11/17/2021 22:04 |
| tel:+13308648546 | c0db5e13-b4e8-4732-ace9-4fb8b69367d5 | 11/18/2021 22:47 | 11/18/2021 22:49 |
| tel:+13308648546 | 777f70b3-1c7d-429a-a45e-c5cbff3df98b | 12/20/2021 14:51 | 12/20/2021 15:04 |
| tel:+13308648546 | 17c8f8ae-e54c-40dc-b3f0-6adfb9d37469 | 12/20/2021 15:02 | 12/20/2021 15:04 |

Table 3 – Calls in Waterfall #2 for 330-864-8546 reflecting overlapping calls

40. In another example, telephone number 423-383-3042 appears in Woolfson's Waterfall #2 results with 13 calls. Three of those calls are shown in Table 4 below. All three of the calls displayed appear to have been in progress – to the same telephone number - during the 28-minute span on 4/8/2022 between 12:03 and 12:31. The second and third calls also appear to have both been in progress during the 37-minute span between 12:03 and 12:40 on 4/8/2024. And the first and second calls appear to have both been in progress during the **17 hour and 7-minute** span between 19:24 on 4/7/2022 and 12:31 on 4/8/2022.

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+14233833042 | 6624528a-8de2-4235-8b88-ea1770bb3b90 | 4/7/2022 16:34 | 4/8/2022 12:31 |
| tel:+14233833042 | 8d3c8034-7e81-4806-837e-019e041387e6 | 4/7/2022 19:24 | 4/8/2022 12:40 |
| tel:+14233833042 | 6ff6984c-7b48-4d0b-a5e8-322e1be1728f | 4/8/2022 12:03 | 4/11/2022 18:25 |

Table 4 – Calls in Waterfall #2 for 423-383-3042 reflecting **three** overlapping calls

41. Examples such as this – of which there are 300 – again reflect two significant problems that jeopardize the reliable identification of any class: (1) None of the call records should have reflected multiple calls to the same telephone number over the same time period – it is not possible for one telephone number to have more than one active call at a time. The fact that hundreds of occurrences of overlapping calls are found just in the Waterfall #2 results means that the overlap condition is common, and that individualized investigation may be necessary to determine the true start and end time of every call; (2) Woolfson's methodology clearly failed to

perform any sanity analysis on the results in both Waterfall #1 and #2, to check for conditions such as those demonstrated with overlapping call times.

**Waterfall2 #2 results include calls with a "NULL" value in the call end time**

42. The Waterfall #2 results produced by Woolfson included seventeen calls that reflected a value of "NULL" in the conversationEnd field – i.e., the ending date and time of those calls could not be determined. For example, Table 5 below depicts the two calls to telephone number 325-947-1554, as reported in the Waterfall #2 results. But the second call reflects a "NULL" value for the end time of the call. Woolfson claims to have determined the call duration for every call he analyzed, but that determination could not have been made in this example.

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+13259471554 | b1c1ce51-a841-48fa-a3e9-94457bba8148 | 5/28/2024 18:22 | 5/28/2024 18:24 |
| tel:+13259471554 | 790536b6-d3c1-4bcc-93a7-f9564172d4d5 | 6/5/2024 20:14 | **NULL** |

Table 5 – Telephone number 325-947-1554 from Waterfall #2 reflecting Null date/time for end of call

43. The inclusion of 17 calls with a *conversationEnd* value of "Null" in Waterfall #2 may seem like a trivial number, compared to the overall size of the Waterfall #2 results. However, those 17 instances are once again reflective of other possible significant problems. None of the call records should have reflected a "Null" value in either the *conversationStart* or *conversationEnd* data field, but the existence of those values could point to the broader problem that any of the start and end times in the call records could have been captured incorrectly. And both the Waterfall #1 and #2 analyses performed by Woolfson, as well as both classes proposed by Plaintiff, are fully dependent on identifying the exact date/time that any call occurred.

44. Moreover, Woolfson purports to have determined the length of each call, in order to identify and remove "zero-length" calls.[10] The only method Woolfson could have used to determine the length of any call was to subtract the start time of the call (*conversationStart*) from the end time of the call (*conversationEnd*). But the SQL database engine used by Woolfson does not allow one to subtract a date/time value from a value of "Null" – any such attempted function will result in a database error. As such, Woolfson's process erroneously included calls in his Waterfall #2 results with *conversationEnd* values of "Null", and it is unclear how his analysis could have missed such errors.

**Calls with unusually long duration**

45. It is my understanding that a typical call between an agent and patient would average a few minutes, although in some circumstances complex discussions could last significantly longer. It is also my understanding that any message left during a call would last less than one minute.

46. Woolfson's Waterfall #2 results include thousands of calls with both irrational and improbable call durations. Waterfall #2 includes, for instance, more than 6,300 calls that lasted one hour or longer, with nearly 5,800 of those calls lasting <u>more than three hours</u>.

47. For example:

[10] "I stated my waterfall analysis process by removing from the CDRs any of those records where the length was indicated as zero." (Woolfson Report ¶ 34).

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+13205879226 | 515b1630-c8fe-4026-8e3a-0037e9699641 | 11/24/2021 16:01 | 11/24/2021 17:01 |

Table 6 – Telephone number 320-587-9226 from Waterfall #2 reflecting call duration of 60 minutes

48. And in this example, telephone number 856-829-4474 appears in Waterfall #2 with a call duration of 185 minutes (3+ hours).

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+18568294474 | 664aff5d-e3be-4d21-b0b1-69d322393da7 | 10/13/2021 13:28 | 10/13/2021 16:33 |

Table 7 – Telephone number 856-829-4474 from Waterfall #2 reflecting call duration of 185 minutes

49. Woolfson fails to recognize or acknowledge that such long lasting calls could likely indicate that the patient was engaged with the calling party – discussing problems or issues with their medical equipment, or planning and discussing needs for future equipment and supply orders - and that patients who did not wish to receive calls would rarely spend more than one hour speaking with the caller, much less more than three hours.

50. My analysis also identified nearly 2,300 calls in the Waterfall #2 results that reportedly lasted more than ten hours, with some calls reportedly lasting as long as **35 DAYS**.

51. For example, telephone number 479-659-1709 appears with two calls in the Waterfall #2 results. As seen in Table 8 below, the first call was reportedly placed on 4/29/2024 at 8:36 PM and lasted 1 minute. The second call, as reflected in the call records, was placed on 5/7/2024 at 9:03 PM, but lasted for **30 days** according to the call record, until 6/6/2024 at 1:00 PM.

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+14796591709 | e38823e9-4884-4c5b-850f-efeee378dcaf | 4/29/2024 20:36 | 4/29/2024 20:37 |
| tel:+14796591709 | ebcb70bc-1ba9-416a-bfa4-36f8c84a764c | 5/7/2024 21:03 | 6/6/2024 13:00 |

Table 8 – Telephone number 479-659-1709 from Waterfall #2 reflecting call duration of **30 days**

52. Woolfson failed to recognize that calls with such unreasonably long call durations were most likely incorrectly recorded in the call records, and his methodology fails to identify and filter such calls out of his results, or question the validity of other call records. The presence of such calls leads to the conclusion that detailed, individualized investigation may be required to determine the true start date, end date, and duration of any call.

**Calls that were placed prior to the earliest DNC date for the given telephone number**

53. According to my analysis, nearly 162,000 of the calls of the 248,590 calls that appear in Woolfson's Waterfall #2 results occurred prior to the earliest DNC date for the number called.[11] Further, for 10,640 of the 17,226 telephone numbers appearing in Waterfall #2, all of the calls identified by Woolfson were placed prior to the earliest DNC date for the number called. In other words, **65% of the calls** appearing in Woolfson's Waterfall #2 **were NOT placed 15 days or more after the DNC date** for the number called, and for **62 % of the telephone numbers** appearing in Waterfall #2, **NONE of the reported calls were placed 15 days or more after the DNC date** for that number.

[11] As described in the section below titled "Calls to TNs that are related to multiple patient accounts", individual calls were placed to specific patients, and that patient identification cannot be determined using the data produced, when a telephone number was used by multiple patients. The analysis I performed to determine calls that were placed prior to the earliest DNC date for a given number was performed using the available data as produced. This analysis compared the telephone number that was called against the earliest DNC date for that number (from file ADAPT_0000227).

54. For example, telephone number 713-858-6796 appears in the Do Not Call records with the following DNC directives, as seen in Table 9 below.

| | |
|---|---|
| PATIENTPHONE | 7138586796 |
| PATIENTMOBILEPHONE | 7138586796 |
| INACTIVEREASON | Legacy On Do Not Call List [DO NOT USE] |
| LASTMADEINACTIVE | 2023-08-03 10:51:34.260 |
| PATIENTDONOTCALLFORSALES | true |
| PATIENT_DO_NOT_CALL_FOR_SALES_CHANGED_DATETIME | 2023-11-18 17:35:44.917 |

Table 9– ADAPT_0000227 DNC record for 713-858-6796

55. Valid DNC directives that appear in the DNC files are those that specify: (1) an INACTIVEREASON of "Legacy On Do Not Call List [DO NOT USE]" or "Patient requested", which indicates the DNC date appearing in LASTMADEINACTIVE; or (2) a PATIENTDONOTCALLFORSALES value of "true", which indicates the DNC date appearing in the field PATIENT_DO_NOT_CALL_FOR_SALES_CHANGED_DATETIME. If conditions (1) and (2) are both met, then the earlier of the two DNC dates is used, in order to determine if any calls were placed after a DNC directive.

56. In Table 9 above, conditions (1) and (2) are both met, so the earlier DNC date of 8/3/2023 is used to determine any DNC calls.

57. Table 10 below reflects the two calls appearing in the Waterfall #2 results, dated 5/24/2023 and 5/26/2023. But both calls were placed well before the DNC date of 8/3/2023, indicating that both calls were erroneously included in Woolfson's Waterfall #2 results. And since none of the calls were placed 15 or more days after the DNC date, then telephone number 713-858-6796 was also erroneously included in those results.

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+17138586796 | ceaab047-c062-481a-8236-ba8a7abc9f00 | 5/24/2023 14:15 | 5/24/2023 14:16 |
| tel:+17138586796 | 30dfbc5b-77b6-444b-a13f-1aa804d10ebc | 5/26/2023 17:54 | 5/26/2023 17:55 |

Table 10 – Telephone number 713-858-6796 from Waterfall #2 reflecting calls placed prior to the earliest valid DNC date

58. In another example, telephone number 704-663-4899 appears in the Do Not Call records with the following DNC directives, as seen in Table 11 below.

| | |
|---|---|
| PATIENTPHONE | 7046634899 |
| PATIENTMOBILEPHONE | 7046634899 |
| INACTIVEREASON | Returned CPAP machine |
| LASTMADEINACTIVE | 2023-12-13 08:40:38.614 |
| PATIENTDONOTCALLFORSALES | true |
| PATIENT_DO_NOT_CALL_FOR_SALES_CHANGED_DATETIME | 2023-12-13 08:40:26.855 |

Table 11 – ADAPT_0000227 DNC record for 704-663-4899

59. In this case, only condition (2) is met (PATIENTDONOTCALLFORSALES = "true") since the INACTIVEREASON of "Returned CPAP machine" does not identify a valid DNC directive. As such, the DNC date for this number is 12/13/2023.

60. Table 12 below reflects the two calls appearing in the Waterfall #2 results, dated 6/15/2020 and 7/30/2020. But both calls were placed well before the DNC date of 12/13/2023, indicating that both calls were erroneously included in Woolfson's Waterfall #2 results. And since none of the calls were placed 15 or more days after the DNC date, then telephone number 704-663-4899 was also erroneously included in those results. Indeed, all calls for this number appearing in the Waterfall #2 results were reportedly placed nearly **3 ½ years before this number was specified as DNC**.

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+17046634899 | d06d6674-938a-43cb-9659-02537dd6b42d | 6/15/2020 18:56 | 6/15/2020 19:06 |
| tel:+17046634899 | 0ec1d3c4-29d3-42ce-8ba3-cee6177d624e | 7/30/2020 12:13 | 7/30/2020 12:15 |

Table 12 – Telephone number 704-663-4899 from Waterfall #2 reflecting calls placed prior to the earliest valid DNC date

61. And in this example, telephone number 651-261-8169 appears in the Do Not Call records with the following DNC directives, as seen in Table 13 below.

| | |
|---|---|
| PATIENTPHONE | 6512618169 |
| PATIENTMOBILEPHONE | 6512618169 |
| INACTIVEREASON | Patient requested |
| LASTMADEINACTIVE | 2024-04-25 14:39:12.227 |
| PATIENTDONOTCALLFORSALES | false |
| PATIENT_DO_NOT_CALL_FOR_SALES_CHANGED_DATETIME | |

Table 13 – ADAPT_0000227 DNC record for 651-261-8169

62. In this case, only condition (1) is met (INACTIVEREASON = "Patient requested") since the PATIENTDONOTCALLFORSALES value of "false" does not identify a valid DNC directive. As such, the DNC date for this number is 4/25/2024.

63. Table 14 below reflects nine calls appearing in the Waterfall #2 results, dated 2/27/2024 thru 5/10/2024. But eight of these nine calls (shaded) were placed prior to fifteen days after the DNC date of 4/25/2024, indicating that eight of the nine calls were erroneously included in Woolfson's Waterfall #2 results.

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+16512618169 | bd291e8e-8f82-4b1b-a35b-efe6bef7709f | 2/27/2024 22:07 | 2/27/2024 22:08 |
| tel:+16512618169 | 849ea8b0-76ab-4067-9f8d-38ec83b35f7e | 3/7/2024 19:41 | 3/7/2024 19:42 |
| tel:+16512618169 | 8ab0bbc9-fda2-433f-8f64-a8f83a059819 | 3/15/2024 22:09 | 3/15/2024 22:13 |
| tel:+16512618169 | 19388b2e-ffdf-4cb0-ba13-a32099a92d99 | 3/26/2024 19:25 | 3/26/2024 19:27 |
| tel:+16512618169 | 807ef8d5-e005-4cb3-b8de-238538e95381 | 4/2/2024 17:33 | 4/2/2024 17:36 |
| tel:+16512618169 | aef2da77-d50f-41f6-9b5f-7f1dd2766e7b | 4/16/2024 22:40 | 4/16/2024 22:42 |
| tel:+16512618169 | 8290ec98-e6eb-4c3a-913f-73aab1b0d94c | 4/26/2024 17:46 | 4/26/2024 17:49 |
| tel:+16512618169 | 2438933e-7f13-4f19-8996-afc77095a093 | 4/30/2024 17:52 | 4/30/2024 17:55 |
| tel:+16512618169 | bbd589dc-a8b2-46db-8ef7-8c035282570a | 5/10/2024 19:52 | 5/10/2024 19:54 |

Table 14 – Telephone number 651-261-8169 from Waterfall #2 reflecting eight of nine calls placed prior to (15 days after) the earliest valid DNC date (4/25/2024)

**Calls that were placed to telephone numbers with no DNC record**

64. Besides calls that were placed to telephone numbers prior to that number's DNC date, Woolfson's Waterfall #2 results also include more than 1,000 calls to telephone numbers that have no DNC date or record at all.

65. For example, telephone number 201-731-3104 appears in the Waterfall #2 results with six calls placed from 3/29/2023 through 7/5/2023. But 201-731-3104 does NOT appear in the DNC records. As a result, all six calls were erroneously included in Waterfall #2, and telephone number 201-731-3104 was erroneously included in the telephone number results for Waterfall #2.

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| 2017313104 | bff12771-8b1b-4df7-a656-c54ed297e05d | 3/29/23 2:09 PM | 3/29/23 2:10 PM |
| 2017313104 | 9db8f273-df49-44a8-a8e6-e68f44965e62 | 3/31/23 2:07 PM | 3/31/23 2:08 PM |
| 2017313104 | dffb9f90-f628-412e-930f-4cc3413f7a82 | 4/3/23 2:12 PM | 4/3/23 2:17 PM |
| 2017313104 | 13832fb5-7e8f-4e4f-8ef8-f42fff8e4eb1 | 6/28/23 6:45 PM | 6/28/23 6:46 PM |
| 2017313104 | f1478fb1-baac-481d-a6dd-f12902db4c1e | 7/3/23 5:14 PM | 7/3/23 5:15 PM |
| 2017313104 | a8403298-a671-4b41-8b33-5d6857b030b3 | 7/5/23 7:31 PM | 7/5/23 7:32 PM |

Table 15 – Telephone number 201-731-3104 from Waterfall #2 reflecting six calls placed to a number with no DNC designation

66. There are 84 unique telephone numbers within the 1,037 calls in Waterfall #2 for which there is no corresponding DNC record, and each of those telephone numbers were erroneously included in the Waterfall #2 results.

**Calls to telephone numbers that are related to multiple patient accounts**

67. As described earlier, patient analysis files were produced by AdaptHealth based on their internal records, which identify telephone numbers associated with more than one patient account. The file ADAPT_0000228 represent these telephone numbers corresponding to multiple patient accounts.

68. It is my understanding that for numbers associated with multiple patient accounts, calls to that number are directed only to one specific patient account, but the specific account that was the intended recipient is not reflected in the call records.[12]

69. For example, one telephone number might be used by two or more family members, who are each a patient of AdaptHealth. As separate patients, each family member will have their own DNC directives. One member may or may not have a DNC directive assigned, and if so, the DNC directive will have its own effective date. Similarly, other family members may or may not have their own separate DNC directive assigned, and if assigned, those DNC directives will each have their own effective date.

70. A similar scenario may apply in which more than one patient, who are not related, have used the same telephone number over time. This scenario is common when one individual uses a given telephone number, eventually relinquishing that number, and the number is reassigned

[12] As described in *Case Background* above, call records may include name or patient ID fields, but these values do not reliably identify the specific patient to whom any call was intended.

to a new, unrelated individual.[13] When both individuals are patients of AdaptHealth, they may both receive calls to that same number over time. As in the example with multiple family members sharing the same number, the multiple unrelated individuals will have each their own DNC directives, and if a DNC has been requested, they may each have their own DNC effective dates.

**Calls in Waterfall #2 to telephone numbers with multiple patient accounts**

71. Based on the multiple patient scenario just described, the Waterfall #2 results are comprised of tens of thousands of calls, for which the specific patient to which the call was directed cannot be determined.

72. By comparing the telephone numbers in Waterfall #2 against the telephone numbers in the 228-patient analysis file, my analysis reveals that 182,581 of the calls in Waterfall #2 were placed to a multi-patient telephone number. Indeed, for nearly 75 percent of the calls in Waterfall #2, the specific patient to whom the call was intended cannot be determined, since the called telephone number appears on multiple patient accounts. Moreover, even if a patient-specific DNC directive existed for that number, and was dated prior to any of the calls, it cannot be determined whether or not any directive applied to the call, and cannot be determined if the specific call was in violation.

73. And based on the call records and DNC data available, such identification cannot be mechanically performed on a class-wide basis, and a detailed, individualized process of manual investigation would be required,

[13] Reassigned telephone numbers are extremely prevalent in the telecommunication industry. Former FCC Chairman Ajit Pai has commented that "over 37 million telephone numbers are reassigned each year", which translates to 100,000 reassignments every day. See DISSENTING STATEMENT OF COMMISSIONER AJIT PAI Re: In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 15-72.

**Calls remaining in Waterfall #2 after removing those erroneously included by Woolfson**

74. I was asked to analyze the Waterfall #2 results, and remove calls that – as described throughout Opinion 2 – were erroneously identified by Woolfson as DNC violations. The result of this analysis is the subset of calls from Waterfall #2 that appear to have been placed after a valid DNC directive, and were not placed to any telephone number that was associated with multiple patients.

75. To perform this analysis, I followed a five-step process, which started with the complete Waterfall #2 results, comprised of 248,590 calls placed to 17,018 unique telephone numbers[14].

76. Step 1 removed all duplicate calls from Waterfall #2, by selecting only the calls with a unique telephone number, start date/time, and end date/time. After removal of duplicate calls, there were 238,761 calls (placed to 17,018 unique telephone numbers) remaining.

77. Step 2 removed from the Step 1 results those calls that overlapped with another call. Overlapping calls were identified when the start time or end time of one call fell between the start and end times of another call.[15] After removal of overlapping calls, there were 238,526 calls (placed to 17,018 unique telephone numbers) remaining.

78. Step 3 removed from the Step 2 results all calls that were based on invalid DNC directives. These invalid DNC calls were identified by selecting those calls with a start date/time

[14] My analysis of the Waterfall #2 results found 17,018 unique telephone numbers. According to the Woolfson Report, Woolfson found in one instance 17,226 unique telephone numbers in Waterfall #2 (Woolfson Report ¶ 44), and in another case, found 17,726 unique numbers in Waterfall #2 (*Id.* ¶ 54).

[15] The removal of overlapping calls was performed using a conservative approach, whereby only one of the overlapping calls was removed. However, it is likely that in many or all instances, the start and/or end times for both overlapping calls were incorrectly reported by the dialing system.

that was less than or equal to the earliest valid DNC date (according to ADAPT_0000227) plus 15 days. After removal of calls based on invalid DNC directives, there were 81,021 calls (placed to 6,376 unique telephone numbers) remaining.

79. Step 4 removed from the Step 3 results all calls that were placed to telephone numbers for which no DNC record existed (i.e. no record was found in the ADAPT_0000227 DNC file for the given telephone number). After removal of calls to numbers without a DNC directive, there were 79,995 calls (placed to 6,292 unique telephone numbers) remaining.

80. Step 5 removed from the Step 4 results all calls that were placed to telephone numbers with multiple patient accounts. These calls were identified by matching the telephone number from the call record against any telephone number appearing in the ADAPT_0000228 patient analysis file, which identifies telephone numbers associated with more than one patient account. After removal of calls to numbers with multiple patient account, there were 3,862 calls (placed to 501 unique telephone numbers) remaining.

**Opinion 3 - Woolfson's Waterfall #1 analysis does not serve any apparent purpose, and suffers from numerous severe technical errors.**

81. Woolfson's Waterfall Analysis #1 purports to identify "two or more outbound calls within 365 days to number to which the two or more calls were placed fifteen (15) days or longer after the initial outbound call" (Woolfson Report ¶¶ 36-39). It is not clear whether such a determination would identify any calls that were in violation of the TCPA. Moreover, the calls identified by Waterfall Analysis #1 do not appear to satisfy either of Plaintiff's proposed classes.

Woolfson also provides no explanation why calls placed 15 days after an initial call would bear any significance or possible violation.[16]

82. Woolfson's Waterfall #1 results also exhibit most of the same technical problems as those described for his Waterfall #2 results in Opinion 2 above.

**Waterfall #1 results include tens of thousands of duplicate calls, despite Woolfson's claim that he eliminated duplicates**

83. Waterfall #1 included 66,263 sets of duplicate calls, where each set of duplicate calls contained two or more calls to the same number. As described in Opinion 2 above, Woolfson asserted that he removed duplicate calls from his analysis, but failed to do so for more than 66,000 calls in Waterfall #1.

**Waterfall #1 results include thousands of overlapping calls to the same number, which is technically impossible**

84. As with his Waterfall #2 results, Woolfson's Waterfall #1 results are replete with overlapping calls to the same telephone number. Indeed, my analysis identified 4,270 calls that, according to the call records, occurred for some portion of time as another call (or calls) to the same number. And once again, one telephone number cannot have more than one active call at the same time, but Woolfson's methodology failed to recognize this problem with the call records, and failed to eliminate overlapping calls from his Waterfall #1 results.

[16] In the Woolfson Report, Woolfson states that he believes "that only calls made to numbers that made to number [sic] while the number was on the IDNC list were included" (Woolfson Report ¶ 52). This belief is apparently based on the appearance of telephone numbers in AdaptHealth's DNC files, that do not appear in the call records. While I do not agree with Woolfson's conclusion that the only calls produced were those that were already designated as DNC, it appears that Woolfson intended the Waterfall #1 results to represent Internal DNC violations, based on his assumption.

**Waterfall #1 results include thousands of overlapping calls to the same number, which is technically impossible**

85. My analysis revealed that, besides duplicate calls, Woolfson's Waterfall #2 analysis produced 4,270 overlapping calls, for which multiple calls are reported to have been connected to the same telephone number for some portion of each call. Woolfson's methodology failed to recognize or remove overlapping calls from his Waterfall #1 results, and failed to recognize that the call records may not be reliably used for purposes of class identification.

**Waterfall #1 results include calls with a "NULL" value in the call end time**

86. The Waterfall #1 results also included 26 calls that reflected a "NULL" value for the *conversationEnd* field (end date/time of the call). The presence of call records with a "NULL" value for the end date/time of calls indicates that (1) the data in all of the call records may not be used to reliably identify the duration of each call, and when those calls occurred, and (2) Woolfson's methodology failed to recognize or remove calls with a "NULL" value in the *conversationEnd* field from his Waterfall #1 results, and failed to recognize that the call records may not be reliably used for purposes of class identification.

**Calls with unusually long duration**

87. Woolfson's Waterfall #1 results include hundreds of thousands of calls with both irrational and improbable call durations. Waterfall #1 includes, for instance, more than 262,000 calls that lasted one hour or longer, with more than 176,000 of those calls lasting <u>more than three</u> hours or more.

88. Woolfson failed to recognize or acknowledge that such long lasting calls could likely indicate that the patient was engaged with the calling party – discussing problems or issues with their medical equipment, or planning and discussing needs for future equipment and supply

orders - and that patients who did not wish to receive calls would rarely spend more than one hour speaking with the caller, much less more than three hours.

89. My analysis also identified nearly 63,000 calls in the Waterfall #1 results that reportedly lasted more than ten hours, with some calls reportedly lasting as long as **73 DAYS**.

90. Woolfson's methodology fails to recognize that calls with such unreasonably long call durations were most likely incorrectly recorded in the call records, and his analysis failed to identify and filter such calls out of his results, or question the validity of other call records. The presence of such calls leads to the conclusion that detailed, individualized investigation may be required to determine the true start date, end date, and duration of any call.

**Calls that were placed prior to the earliest DNC date for the given telephone number**

91. According to the Woolfson Report, the Waterfall #1 analysis was performed to identify "two or more outbound calls within 365 days to number to which the two or more calls were placed fifteen (15) days or longer after the initial outbound call" (Woolfson Report ¶¶ 36-39).

92. The Waterfall #1 analysis makes no reference to using any of the Internal DNC dates produced by AdaptHealth. Instead, it simply identifies calls placed to a number 15 days or more after the initial call was placed, along with the additional requirement that two or more calls must appear within a 365-day period. Although these requirements do not include a comparison of the call dates with the date of any DNC directives, it seems counter-intuitive that the Waterfall #1 analysis should ignore some 187,000 records of DNC data produced by AdaptHealth.

93. For example, Waterfall #1 includes 18 calls for telephone number 201-205-3048, with call dates ranging from 12/30/2021 through 11/10/2022. The ADAPT_0000227 DNC file

also includes DNC directives for 201-205-3048, which establish a DNC date of 11/18/2023 (See Tables 16 and 17 below).

| | |
|---|---|
| PATIENTPHONE | 2012053048 |
| PATIENTMOBILEPHONE | 7175762918 |
| INACTIVEREASON | Medicare Inactive 15 Months |
| LASTMADEINACTIVE | 2024-06-01 05:04:14.297 |
| PATIENTDONOTCALLFORSALES | true |
| PATIENT_DO_NOT_CALL_FOR_SALES_CHANGED_DATETIME | 2023-11-18 17:35:45.260 |

Table 16 – ADAPT_0000227 DNC record for 201-205-3048

| dnis | conversationId | conversationStart | conversationEnd |
|---|---|---|---|
| tel:+12012053048 | e57fa7bc-039a-404d-87db-236c8e8fc68c | 12/30/2021 15:46 | 12/30/2021 15:56 |
| tel:+12012053048 | 3ff6c28f-5f1f-4c56-9028-fbfc6e602751 | 1/4/2022 16:43 | 1/4/2022 16:44 |
| tel:+12012053048 | 1b4f17dc-c594-4b58-af47-2cb0798143aa | 1/5/2022 15:09 | 1/5/2022 15:10 |
| tel:+12012053048 | 4a4e669a-9dcc-4404-84ec-1db321963561 | 2/14/2022 14:08 | 2/14/2022 14:20 |
| tel:+12012053048 | a3c9a9c8-5694-4830-a4e9-076412467cd5 | 5/11/2022 17:15 | 5/11/2022 17:17 |
| tel:+12012053048 | b798e81b-b27a-49af-a568-40b77ecbe073 | 6/15/2022 17:32 | 6/15/2022 17:33 |
| tel:+12012053048 | fa4522ce-c28e-4857-847c-1406b3e0de1a | 6/20/2022 19:31 | 6/20/2022 19:32 |
| tel:+12012053048 | 3b1e29f7-4e38-4e92-9dad-447b63b297cc | 6/21/2022 19:08 | 6/21/2022 19:09 |
| tel:+12012053048 | dc7f25e2-c01c-477d-80eb-5c0d22563c8d | 6/24/2022 16:19 | 6/24/2022 16:21 |
| tel:+12012053048 | ebcdd384-53a1-490e-a933-f182b0ed4ae5 | 7/26/2022 16:06 | 7/26/2022 16:07 |
| tel:+12012053048 | 19e495ce-61ed-4a4a-bae1-961e0c1e956f | 8/26/2022 19:05 | 8/26/2022 19:07 |
| tel:+12012053048 | ed363fc1-249e-4422-9a2f-3f844d193a17 | 9/28/2022 20:15 | 9/28/2022 20:16 |
| tel:+12012053048 | 5652e2c1-55ba-4ba0-9580-9dc7c524a316 | 10/4/2022 22:16 | 10/4/2022 22:17 |
| tel:+12012053048 | 18860e7c-793b-46b4-8ae8-e6991e17bb54 | 10/12/2022 18:52 | 10/12/2022 18:53 |
| tel:+12012053048 | bc57486a-deda-4be2-9acb-af3fbc4378f0 | 10/14/2022 20:54 | 10/14/2022 20:55 |
| tel:+12012053048 | 82b7cb64-6a75-458e-83fe-6b416c28608d | 10/21/2022 17:23 | 10/21/2022 17:24 |
| tel:+12012053048 | 4963cff7-5b8d-4409-aabd-0233be23048f | 10/26/2022 20:50 | 10/26/2022 20:51 |
| tel:+12012053048 | 2024e06b-f10b-406c-b112-ccf70971a427 | 11/10/2022 21:33 | 11/10/2022 21:38 |

Table 17 – Telephone number 201-205-3048 from Waterfall #1 reflecting 18 calls placed prior to (15 days after) the earliest valid DNC date (11/18/2023)

94. Woolfson's Waterfall #1 analysis includes these 18 calls, simply because they happen to have been placed 15 days or more after the initial call to 201-205-3048. However, Woolfson provides no explanation why 187,000 DNC records should be ignored, and which

indicate that the DNC directive for 201-205-3048 occurred on 11/18/2023, more than one year *after* the last call to this number.

95. In total, Woolfson's Waterfall #1 results include 2,671,900 calls (out of the total of 2,770,470) that were placed prior to the DNC date for that number, as produced by AdaptHealth. In other words, for 96% of the calls in Woolfson's Waterfall #1 results, Woolfson's methodology simply speculates that the call was in violation – based on the assumption that a DNC was requested prior to the first call - despite actual DNC evidence to the contrary.

**Waterfall #1 also includes more than 1.7 million calls placed to multi-patient telephone numbers**

96. As with the Waterfall #2 results, Waterfall #1 is packed with calls that were placed to telephone numbers that correspond to multiple patients. By comparing the called numbers appearing in Waterfall #1 against the 228 patient analysis file, it is revealed that 1,708,470 of the 2,770,470 (62 %) Waterfall #1 calls were placed to telephone numbers that correspond to multiple patients, and that for these calls, it cannot be determined on a class-wide basis the intended recipient of each call.

**Opinion 4 - Woolfson's methodology does not propose any practical means to identify the names and addresses of class members based on class-eligible telephone numbers.**

97. Even if Woolfson managed to correct all the errors and limitations in his methodology, and in the execution of that methodology, Plaintiff would then be faced with the equally serious task of identifying the individual names and addresses based on the telephone numbers that satisfy the criteria for Plaintiff's classes.

**Woolfson proposes an unworkable and unproven carrier subpoena process**

98. Woolfson has not made any attempt to identify the names and addresses of individuals associated with class-eligible telephone numbers. Instead, he proposes that those individuals can be identified by way of subpoenas to the appropriate telephone carriers (Woolfson Decl. ¶¶ 45-50).

99. Woolfson maintains that carrier subscriber records can be retrieved by way of subpoena, but his proposal is fraught with limitations.

100. Woolfson fails to acknowledge in his proposal of a subpoena process the requirement that specific dates or date ranges must accompany each telephone number in the subpoena submission, in order for the carrier to search for subscriber records that correspond to the appropriate historical timeframe.

101. Furthermore, Woolfson fails to address data retention periods, which vary by telephone carrier, and limit the amount of time subscriber information may be available in response to subpoenas. For example, a report from the Massachusetts ACLU states that Sprint's (now part of T-Mobile) retention of subscriber records is limited to only 18 months, while Verizon's is reported as simply "more than one year"[17]. Also, with respect to data retention, Verizon's privacy policy states that "Our policies require that we retain records containing personal information for as long as they are needed for legal, tax, audit, investigative, and/or security purposes and then securely delete or destroy them."[18], indicating that subscriber data is essentially stored no longer

[17] PrivacySOS report , dates February 9, 2914 at https://privacysos.org/blog/how-long-does-my-phone-company-store-my-data-how-easily-will-it-give-my-info-up-to-the-cops/ (last visited 6/1/2024)

[18] Verizon Wireless' Full Privacy Policy at http://www.verizon.com/about/privacy/full-privacy-policy (last visited 6/1/2024)

than is absolutely necessary. Based on these observations, the retention of subscriber data for some of the largest wireless carriers may not carry back to 2019, which would be necessary to identify all subscribers in this matter.

**Woolfson fails to address the critical need to identify users instead of subscribers, accommodate family plans, and determine owners of prepaid phones**

102. Woolfson's "proposal" neglects to address the need to identify the actual authorized users of each telephone number, as opposed to simply identifying the subscriber of the account where the telephone number appears.

103. The complex, number-by-number process of attempting to reliably and accurately identify the historical *subscriber* associated with a cell phone number as of the date of alleged calls does not even begin to address the identification of cell phone *users*. Because the subscriber and authorized user of a cell phone number are not necessarily the same person, identifying the subscriber does not mean the user has been or can be identified.

104. Some cell phone accounts may have only one subscriber who is also the sole user, but several other possibilities exist. For example, the subscriber may not be a user of the cell number at all, and there may be multiple authorized users on a telephone plan and one or more of the authorized users may not be the subscriber. This often occurs in the context of business plans (where a corporation or entity is the subscriber of a number with one or more different users) and **family plans** (where a single family member is the subscriber of an account with several different numbers used by other family members).

105. Research has estimated that as many as 75 percent of wireless subscribers are on discounted, multi-line family plans.[19] And it has more recently been reported that groups of individuals who are not even related are taking advantage of discounted rates from family plans. A 2019 Wall Street Journal article notes that groups of friends, colleagues, roommates, neighbors – even a group of Jesuits dispersed all across the country - participate in family plans. And the more diverse the membership in family plans, the less chance there is of being able to identify the specific individuals who are associated with a specific telephone number under such plans. This same Wall Street Journal article also confirms that a recent survey by Cowen Inc. found that 70% of postpaid cellphone users participate in family plans.[20]

106. Prepaid cell phones (aka "burner phones") create yet another layer of complexity in attempting to identify historical subscribers. Prepaid cell phones are available to customers from many sources—traditional cell phone carriers, department stores, convenience stores, online retailers such as Amazon, and online auction sites like Ebay, among others. This wide variety of sellers makes collection of subscriber information less uniform, and further reduces the reliability of any data that is collected by and potentially available from them. There is no requirement at the federal level for prepaid cell phone purchasers to provide any verification of name, address or other contact information. A federal bill was introduced in 2010 to institute an identification requirement for the purchase of prepaid mobile devices, but has never been passed into law.[21]

---

[19] Andy Vuong, *Wireless subscribers are finding breaking up is hard to do*, The Denver Post (Sept. 14, 2012, 4:50 PM), https://www.denverpost.com/2012/09/14/wireless-subscribers-are-finding-breaking-up-is-hard-to-do/ (last visited 6/1/2024)

[20] *See The New Rules of the Family Cellphone Plan* at https://www.wsj.com/articles/the-new-rules-of-the-family-cellphone-plan-11562405400 (last visited 5/4/2022)

[21] Pre-Paid Mobile Device Identification Act, S. 3427, 111th Cong. (2010).

More recently, a similar bill was introduced to Congress in 2016, and also never enacted.[22] As there is no requirement that prepaid cell phone carriers obtain and maintain subscriber identification data, the process of identifying individual, historical subscribers of prepaid cell phone services would likely be impossible.

107. In Gurzi v. Penn Credit, for which I served as expert for the defendant, John Keep, Sprint's records custodian, testified that the subscriber information on prepaid accounts (which cannot be required by carriers) cannot be verified by Sprint:

> Q That's fair, that's fair. If I understand correctly, with respect to the prepaid accounts Sprint doesn't know whether the subscriber information it received is accurate?
> A That's correct.
> Q And it doesn't do anything to verify the accuracy of the information provided?
> A Also correct.[23]

And Mr. Keep also confirmed that the names of authorized users on family plans accounts are optional as well, and that Sprint does not verify that information on accounts where it does happen to be provided:

> Q And but a user -- let's use an example. So I have a family plan, okay, and I have a cell phone number and I'm liable for the bill and so I would in that situation be both a subscriber and a user; correct?
> A That's right.
> Q Okay, so I have two daughters in college and they both have phones but they are not liable for the bill so they would just be users; correct?
> A That's right.
> Q And so in terms of finding and identifying users, does Sprint depend on the subscriber to provide user information?
> A Yes.
> Q Because if I get a family plan for whatever reason I don't have to provide the names of those people who are going to be using the phone; correct?
> A That's right.

---

[22] Closing the Pre-Paid Mobile Device Security Gap Act of 2016, H.R. 4886, 114th Cong. (2015-2016).

[23] Deposition Testimony of John Keep, *Gurzi v. Penn Credit*, No. 6:19-cv-00823 (M.D. Fla), see Exhibit B 19:25 – 20:7.

Q It's a voluntary process?
A Correct.[24]

108. And in my TCPA case experience, I have observed first-hand the barriers to identifying users versus subscribers by way of carrier records. For example, in the case of *Wilson v. Badcock*, No. 8:17-cv-02739 (M.D. Fla.), for which I was engaged as an expert, named plaintiff Victoria Wilson testified that she was the user of the cell phone number that allegedly received calls from the defendant. But Wilson's grandmother, with whom she lived, paid for that phone service. Subscriber records produced in that case confirmed that: Wilson's grandmother (with a different last name than the plaintiff) was the subscriber of the number at issue; there was no indication that anyone other than Wilson's grandmother was associated with the account; the subscriber name on the account bears no similarity to plaintiff Victoria Wilson's name; and the subscriber records report a subscriber address that does not match the residential address that plaintiff Wilson described during her testimony.

**Woolfson's subpoena solution faces severe procedural restrictions**

109. Woolfson also fails to address or provide a solution to the significant logistical hurdles standing in the way of retrieving subscriber data via carrier subpoenas.

110. In order to implement Woolfson's proposed subpoena process, Plaintiff must first identify the carrier who was responsible for each class-eligible telephone number as of the historical date(s) of calls. This will require identification of either the facilities-based carrier, or the reseller - a different carrier than the carrier who provides the transmission services. Woolfson contends that he can identify carriers using the data he purportedly received from an unproven, undocumented vendor Tel-Lingua. But Woolfson fails to describe:

[24] *Id*. 21:4-24.

a. Any documentation related to Tel-Lingua. Woolfson does not even identify a website for the vendor
b. The name of any product offering he purportedly used for this purpose
c. Any evidence of Tel-Lingua's reliability or accuracy in performing the proposed carrier identification
d. Any evidence that Tel-Lingua is able to identify the correct carrier when a wireless or landline telephone number is serviced by a reseller, rather than a facilities-based carrier;[25]

111. Woolfson fails to explain (or even acknowledge) how his carrier subpoena process will overcome the logistical hurdles of sending subpoenas to possibly hundreds of telephone carriers. According to the Florida Public Service Commission's Master Commission Directory, there are more than 280 regulated telecommunications providers doing business in the state of Florida alone.[26] Woolfson or Plaintiff may argue that there are only three or four major wireless carriers that would need to be contacted, but that ignores dozens and dozens of <u>wireless resellers</u> who would be responsible for maintaining records of names and addresses of their subscribers.

112. To recap - Woolfson's subpoena proposal suffers from severe shortcomings:

a. The lack of evidence to support the vendor he purportedly uses to identify carriers to whom subpoenas should be sent
b. The lack of any case experience where Woolfson has demonstrated the viability of his proposed subpoena process
c. The lack of any solution to address limited carrier retention of the required subscriber data

[25]Facilities-based wireless carriers are those carriers who own and operate their own wireless networks and related equipment. Resellers, also known as Mobile Virtual Network Operators (MVNOs) sell wireless services to end customers, and bill those customers for that service, but they purchase or lease the network facilities that the phone service operates on from one or more facilities-based wireless carriers.

[26] See FPSC Regulated Companies Master Commission Directory at https://www.psc.state.fl.us/master-commission-directory (last visited 6/1/2024)

d. The inability of carriers to identify authorized users versus subscribers and the limited knowledge of carriers to identify members of family plans and users of prepaid phones

e. The practical barriers to sending subpoenas, and processing disparate responses from hundreds of wireless and landline carriers

**Woolfson has disclaimed the ability to identify class members**

113. And besides these limitations, Woolfson cannot resolve the fact that he has opined in prior cases that class members cannot be determined for telephone numbers on a class-wide basis. For example:

a. In Defendant's Rebuttal Expert Witness Report of Aaron Woolfson, *Gilmore v. USCB*, No, 5:17-cv-00119, (M.D. Ga.), D.E. 53-4, ¶ 20, Woolfson declared that "There simply does not exist any reliable manner that I am aware of to use a database or electronic method to determine which individual on a master account was attributed to which number on a particular date".

b. In the Declaration of Aaron Woolfson, *Stein v. Monterey Financial*, No. 2:13-cv-1336, (N.D. Al.), D.E. 69-1, Exhibit D, ¶ 65, Woolfson stated: "Simply put, there is no authoritative database that can identify who was called, and no way of determining who was actually receiving the telephone call …".

c. And in Defendant's Rebuttal Expert Witness Report, *Ranwick v. Texas Gila*, No. 0:13-cv-02792, (D. Minn.), D.E. 30-5, ¶ 39, Woolfson declared: "In my experience as an expert in databases, and as a professional who has built databases for use by both traditional and mobile telephone companies, I can testify that there is no reasonable way to obtain information related to the precise ownership of a number. This issue is especially problematic with the proliferation of MVNO's ("Mobile

Virtual Network Operators") where an end user is subscribed to a carrier, but that service is actually being provided by another, underlying carrier altogether.".

**Reservation of Right to Amend**

114. I reserve the right to offer additional opinions and/or to amend this report subject to additional information I receive after issuance of the report. I also reserve the right to modify or supplement my report based on any expert report(s) presented on behalf of the Plaintiffs or other defendants.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and this declaration was executed on this 19th day of August, 2024 at Burlington, Connecticut.

Jan Kostyun

**Exhibit A – Jan Kostyun CV**

# Jan Kostyun CV



Jan Kostyun is an independent technology consultant with over 35 years of experience covering the areas of telecommunications, enterprise architecture, and information technologies. He has been directly employed in various capacities by major telecommunications companies, including Bell Telephone Laboratories, GTE, Verizon, and Syniverse Technologies. He has also been engaged as a consultant on various telecommunications issues by telecommunications companies and regulatory authorities, including Rogers Wireless (the largest wireless carrier in Canada), CRC (the national telecommunications regulatory agency of Colombia), and Syniverse Technologies. He has worked at numerous technical levels in software development, database technology, and enterprise architecture. He has worked for over 20 years providing consulting services, software development, and data analysis in the field of telephone number portability. This experience covers landline, wireless, and intermodal (landline-to-wireless or wireless-to-landline) number portability, as well as telephone number pooling. He has played lead roles in the technical and organizational processes of porting landline numbers in the U.S. as well as the porting process for wireless numbers in the U.S., Canada, and Colombia.

As a software architect for Bell Telephone Labs, GTE, Verizon, and Syniverse, Mr. Kostyun also developed expertise in areas such as landline and wireless number provisioning, including the end-to-end process of establishing service for subscribers; landline and wireless order-entry, including the collection of subscriber contact information; initial implementation of the National Do Not Call registry; technical experience with telecom features such as voice calling, SMS messaging, fax transmissions, voicemail, auto dialer and Interactive Voice Response Unit (IVRU) technology, and switching implementations; and a wide variety of telecommunications industry standards.

Mr. Kostyun also has extensive experience in database methodologies, data analysis, and data mining. His experience with database technologies includes hierarchical, network and relational database models and implementations. He has instructed working professionals on the use of database programming, support and internal architecture, and has developed database training courses. He is proficient with advanced database modeling, optimization and query techniques, as well as the development of database software applications. He has personally performed database queries and data analysis against hundreds of data stores, including but not limited to Internal and National Do Not Call lists, Wireless Block identifiers, Number Portability transaction lists; carrier call detail records; telephone number reverse-lookup data records from commercial data vendors; and call records and text messaging records from platforms used by a variety of vendors.

For the past ten years Mr. Kostyun has worked as a consultant and expert witness on cases covering TCPA issues, patent litigation, software copyright infringement and trade secret misappropriation, software value determination, vandalism, and sabotage of application programs.

Mr. Kostyun's expert witness work in TCPA cases has covered: wrong number and reassigned number calls; National and internal do not call violations; Consent and revocation of consent analysis; Identification of call recipient location; Wireless/landline identification; Capacity of dialing systems to generate telephone numbers and dial without human intervention; Ascertainability of class members based on telephone number; Carrier subpoena process; Voice calling; SMS/text messaging; Fax transmission; and Ringless Voicemail delivery. Mr. Kostyun has testified both in deposition and in court, his opinions have never been stricken or rejected, and he has been cited in support of denial of class certification, and award of Summary Judgment in multiple TCPA cases.

**Professional Experience:**

**2012 to present** ***Independent Consultant*** ***Middletown, NJ/Burlington, CT***

Representative case descriptions:

- Expert witness representing defendant under civil case alleging violation of Telephone Consumer Protection Act (TCPA). Extensive review and critique of plaintiff's expert witness reports; data analysis and research of very large call-record databases, alleged call violations and ported telephone numbers; and ATDS evaluation. Preparation of expert report in support of defendant, contributing to denial of class certification and judgment in favor of defendants.
- Expert consultant representing defendant in civil case alleging violation of TCPA. Provided analysis and report of plaintiff telephone numbers, porting activity and subscriber information.
- Expert consultant representing defendant under class action complaint alleging violation of TCPA involving text messaging/SMS activity. Provided analysis and report of CTIA/Wireless Industry best practices for short code messaging campaigns.
- In class action TCPA case, served as expert to provide ATDS evaluation, analysis of express consent and TCPA applicability of contested texts and voice calls.
- In class action TCPA matter, developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones. Also developed expert report rebutting opposing expert's data analysis and subscriber identification, contributing to denial of class certification and exclusion of Plaintiff's expert report.
- Expert witness in class action TCPA complaint, providing in-depth analysis of National and internal Do Not Call (DNC) records and very large volume call record files, and critical assessment of opposing expert's data analysis.
- In class action TCPA case, developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of fax telephone numbers. Also developed expert report rebutting opposing expert's opinions regarding successful completion of fax transmissions and identification of fax recipients.
- In class action TCPA matter, developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones and residential landlines.
- In class action TCPA matter, developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC and wrong number calls, and addressing technical aspects of identifying users/subscribers of cell phones.
- In class action TCPA matter, performed extensive analysis of high-volume call data

records against internal and national DNC files.

- In class action TCPA case, analyzed call data records, performed testing and analysis of defendant's telephone calling system and provided opinions addressing defendant's alleged use of an ATDS for telemarketing purposes.
- In class action TCPA case, developed expert rebuttal report challenging opposing expert's data analysis methodology, and addressed technical aspects of identifying users/subscribers of cell phones.
- In class action TCPA matter, developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC violations, and addressed technical aspects of identifying users/subscribers of cell phones.
- In class action TCPA matter, developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC violations, reliability of opposing expert's data vendors, and addressed technical aspects of identifying users/subscribers of cell phones.
- In class action matter involving the Washington Automatic Dialing and Announcing Device (WADAD) statute, provided expert analysis and support regarding carrier records, carrier subpoena responses, and identification of wireless/landline subscribers and calls within specific geographic boundaries.
- In class action TCPA case, rebutted opposing expert's analysis of wrong number designations, and class member identification, contributing to denial of class certification.
- In multiple class action matters, provided analysis of Defendant's dialing equipment and opinions addressing the capacity store or produce telephone numbers to be called, using a random or sequential number generator, as well as the capability to dial telephone numbers without human intervention.

**2009 to 2011** **Senior Consultant**
***eComp Consultants*** ***Tampa, FL***

Provided consulting on design and development of software products and wireless technology. Provided technology consulting and expert support for enterprise architecture, software engineering and telecommunications in the areas of:

- Patent portfolio evaluation, market valuation, and prior art analysis.
- Patent litigation consulting for information technology in telecommunications, wireless and enterprise architecture for validity/invalidity and infringement/non-infringement analysis.
- Software contract analysis for disputes involving custom software, software copyright and trade secret infringement, and software valuation.
- Functional analysis, Source Code reviews, Damage Assessment analysis and software tampering evaluation.

**2009 to 2010** ***Independent Consultant*** ***Tampa, FL***

Collaborated with Value Partners Management Consulting firm in preparation of proposal to the Colombian National Regulatory Agency for implementation of Wireless Number Portability across Colombia.

**Prior experience** **Senior Consultant**

***BusinessEdge Solutions/EMC*** ***Toronto, Ontario, Canada***

Provided strategic and tactical guidance to Rogers Wireless, Canada's largest wireless carrier in the successful, on-schedule implementation of Canadian wireless number portability.

- Developed detailed specifications for Rogers' internal business applications interface to the Syniverse/Telcordia Service Management Gateway (SMG) for communication of wireless port requests & responses to wireless and wireline trading partners.
- Served as Rogers' representative to several industry-level committees, including SMG Defect Management and SMG Testing, acting as liaison between Rogers and all Canadian carriers. Developed detailed specifications for acceptance and regression testing of SMG for entire Canadian industry.
- Provided integration expertise to Rogers' application development, network administration, system testing, production support, and program management team
- Provided in-depth knowledge of Telcordia SMG interface, Canadian portability standards (CWNPG and CLOG), Wireless to Wireline (WPR to LSR) translation requirements, and post-implementation data analysis to determine customer porting trends and roadblocks.

**Senior Consultant**
***Syniverse Technologies*** ***Tampa, FL***

Served as development specialist & subject matter expert during implementation of U.S. Wireless Number Portability (WNP). Designed the reporting data warehouse and client billing processes which support Syniverse's WNP & ICC Clearinghouse product offerings.

- Provided significant expertise in the technical internals, database design and API requirements of Telcordia's SMG platform; WNP WICIS Industry standards; InterCarrier Communications (ICC) Process; Service Order Administration (SOA)/NPAC interaction; and Tekelec LSMS database access.
- Subject matter consultant to other Syniverse WNP product offerings, including Pre-port Validation, Fallout Management, Wireline Porting and PortFlow Management. Responsible for interaction and consulting with Sales, Business Development, Training and Production Support organizations.
- In-depth experience with Cellular Provisioning, GSM/CDMA technologies, SIM Card provisioning

**Software Engineer**
***Verizon Communications*** ***Tampa, FL***

Served as Enterprise Integration Architect for Local Number Portability (LNP) and Telephone Number Pooling (TNP) projects. Responsible for development of enterprise-level architecture and system integration of 38 major applications in order to develop and deploy Wireline LNP and Number Pooling capabilities for the entire former-GTE operating area.

- Managed technical team of 30+ individual project architects, including interaction with program management, functional owners, development teams, system testers and production support personnel.

- Coordinated retail and wholesale ordering, provisioning, billing and service assurance business functionality.
- Developed significant expertise in number portability network element systems (Telcordia's LSMS and SOA), including low-level knowledge and direct access to LSMS internal databases.
- Directly responsible for the successful national deployment of LNP/TNP in GTE/Verizon West. Maintained close working relationship with Network Engineering's TN Administrator, assisting with LSMS extracts for reconciliation processes, TNP block donation and block allocation processing, and creative use of LNP capabilities for special customer requests.

**Senior Advisory Systems Engineer**
***GTE Telephone Operations*** ***Tampa, FL***

Provided extensive systems development work as enterprise architect and development team project manager.

- Developed technical specifications for numerous systems across GTE Telephone Operations, primarily within the Customer Contact and Operations domains. Technical specifications established the hardware, software and network architecture with emphasis on a distributed, UNIX-based, client/server environment.
- Established corporate standards for Relational DBMS products, including interaction with Oracle and Informix vendors
- Established corporate standards for UNIX hardware and operating system platforms, including interaction with SUN, HP and IBM vendors.
- Managed application development for TCOM, a distributed, IBM-based bulk mail processing application
- Application technical lead for Central Office personnel dispatch and work allocation application.

**Senior Database Analyst**
***Exxon Company, USA*** ***Houston, TX***

Provided database analysis and database administration in large-scale IBM environment, specializing in project team support, implementation of DB2/SQL and use of IBM utilities, IBM Dialog Management Services.

**Senior Database Analyst**
***Ford Aerospace*** ***Houston, TX***

Served as key member of application team for NASA contractor responsible for Shuttle Simulator Reconfiguration System. Responsibilities included data analysis and database design, and application lead.

**Senior Consultant**
***Informatics, Inc.*** ***Houston, TX***

Consulted for major oil & gas and technology clients, offering application conversions, development of new systems, and application optimization. Conducted international technical training classes in IBM IMS DB/DC, IBM Utilities and IBM Internals

**Senior Systems Analyst**
***GTE Data Services*** ***Tampa, FL***

Served as project lead and technical advisor for development of IBM/IMS-based customer billing application and IBM/CICS online order-entry application. Specialized in deployment of mini-computer office-automation systems.

**Technical Lead**
***Bell Telephone Laboratories*** ***Piscataway, NJ***

Application lead for development of IBM/IMS-based Inventory Management system implemented across entire Bell System.

**Education:**

B.S. Mathematics – Magna Cum Laude Union College, Schenectady, NY

M.S. Computer Science Union College, Schenectady, NY

| | | |
|---|---|---|
| **Wireless Communications** | 7 years | Syniverse/Telcordia Service Management Gateway (SMG), Canadian portability standards (CWNPG and CLOG), Wireless to Wireline (WPR to LSR) translation, Wireless Number Portability (WNP) & WICIS Industry standards, InterCarrier Communications (ICC), Service Order Administration (SOA)/NPAC,; and Tekelec LSMS database, Wireline Porting and PortFlow Management, Provisioning, GSM/CDMA technologies, SIM Card Provisioning |
| **Telecommunications** | 25 years | Local Number Portability (LNP), Telephone Number Pooling (TNP), Telcordia's LSMS and SOA, Customer Contact, Provisioning & Operations, eCommerce applications |
| **Database Technology** | 30 years | IBM IMS Database/Data Communication; DB2/SQL database design, Performance Optimization, Query Specialist; Informix; ORACLE; Logical Data Modeling; MS Access |
| **Software Engineering** | 20 years | Enterprise integration, Order Entry/CRM, Trouble Management, Provisioning, Customer Billing, Work Allocation/Work Management, Inventory Management |

**Tools & Platforms**

| | |
|---|---|
| **Languages and tools:** | IBM Assembler, FORTRAN, COBOL, C, C++, JAVA, Visual Basic, IMS DB/DC, CICS, DB2/SQL, Informix, Oracle, MS Access/SQL, HTML, MS Office, WordPress |
| **Platforms:** | IBM Mainframe/370, IBM 4300, IBM 9700, IBM RS/6000, HP 9000, Sun SPARC, Windows-based PC |
| **Operating Systems:** | IBM MVS, IBM DOS/VSE, AIX, HP-UX, UNIX, Solaris, MS-DOS, Windows |
| | |

| **Professional:** | Published article in *Computerworld*, 9/24/84: "IBM ISPF dialog manager: More than meets the eye" |
|---|---|

**Case Experience:**

**Adam Hage et. al. v World Financial Group and TransAmerica Corp**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Illinois |
| Client: | World Financial Group and TransAmerica Corp, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Engaged as consulting expert to analyze alleged text message violations and opine on ability to ascertain class members based on telephone numbers. |
| Represented by: | Chittendon, Murday & Novotny LLC |

**Alex Jacobs et. al. v Quicken Loans, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Quicken Loans, Inc. as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones. Also developed expert report rebutting opposing expert's data analysis and subscriber identification, contributing to denial of class certification and exclusion of Plaintiff's expert report. |
| Represented by: | Goodwin Procter LLP |

**Amber Goins et. al. v Walmart and Palmer Recovery**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Walmart and Palmer Recovery as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's data analysis, historic wireless identification and subscriber identification. |
| Represented by: | Shepard, Smith, Kohlmyer & Hand, P.A. / Sheppard, Mullin, Richter & Hampton, LLP |

**Andrew Perrong v Cleo Communications LLP, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Eastern District of Pennsylvania |
| Client: | Cleo Communications as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert consulting regarding the ability to identify violations of the National Do Not Call Registry, and characteristics of Automatic Telephone Dialing Systems |
| Represented by: | Comegno Law Group, PC |

**Ameranth v Six Continents Hotels**

| | |
|---|---|
| Jurisdiction: | Superior Court of DeKalb County, State of Georgia |
| Client: | Six Continents as defendant in complaint for web advertising misuse and trade secret infringement of web-based concierge application |
| Nature of Case: | Web Advertising Analysis and Intellectual Property Litigation |

| | |
|---|---|
| Nature of Engagement: | Consulting expert analyzing web-based advertising practices, user interfaces, and development models; provided expertise in web marketing, online advertising, and eCommerce technology development standards, design and architecture. |
| Represented by: | Alston & Bird |

**Angela Gurzi et. al. v Penn Credit Corporation**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Penn Credit as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the barriers to identifying historical users and subscribers associated with telephone numbers. Identified unreliability with the delivery status of direct-drop/ringless voicemail messages. |
| Represented by: | Golden Scaz Gagain, PLLP |

**Anthony Gonzalez-Pagan et. al. v Redwood Clairmont on the Green, LLC**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Redwood Clairmont on the Green, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as consulting expert to provide analysis of call data, identification of historical wireless status of telephone numbers, and identification of DNC calls. |
| Represented by: | Berger Singerman LLP |

**Ariel Shuckett et. al. v DialAmerica Marketing, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of California |
| Client: | DialAmerica, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as consulting expert to rebut opposing expert's analysis of call data, identification of historical wireless status of telephone numbers, and identification of historical users/subscribers of telephone numbers. Contributed to granting of Summary Judgment in favor of Defendant. |
| Represented by: | Berenson LLP |

**Brittany Burk et. al. v Direct Energy, LP**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Texas |
| Client: | Direct Energy as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Rebuttal of ATDS opinion by opposing expert, Call record and SMS record data analysis, wireless/landline identification, lead data and landing page analysis, analysis of express business relationships. Contributed to court's denial of class certification. |
| Represented by: | McDowell Hetherington LLP |

**Bruce Settle et. al. v Senior Choice Plans, LLC**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Indiana |
| Client: | Senior Choice Plans as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Analysis of National D0 Not Call Registration, FTSA Autodialing allegations, Tel-Lingua, business/residential identification, identification of calls placed to persons in Florida |
| Represented by: | Mark R. Waterfill, Attorney at Law, P.C. |

**Bryon Scott et. al. v The Federal Savings Bank, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Oregon |
| Client: | The Federal Savings Bank as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Prepared expert report addressing the lack of usable call records to identify completed calls, the lack of evidence of prerecorded solicitation calls, and obstacles preventing the identification of National Do Not Call Registry violations. |
| Represented by: | Mitchell Sandler LLP |

**Carrie Beets et. al. v Molina Healthcare, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Central District of California |
| Client: | Molina Healthcare, Inc., as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as consulting expert to provide analysis of call data, identification of historical wireless status of telephone numbers, and identification of consent. |
| Represented by: | Boies Schiller Flexner LLP |

**Carrie Couser et. al. v Cucamonga Valley Medical Group, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Central District of California |
| Client: | Cucamonga Valley Medical Group, Inc. as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as expert to provide ATDS evaluation, analysis of express consent and TCPA applicability of contested texts and voice calls. |
| Represented by: | Schmid & Voiles |

**Carrie Couser et. al. v Dish One Satellite, LLC**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Central District of California |
| Client: | Dish One, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as expert to provide in-depth analysis of National and internal Do Not Call (DNC) records and very large volume call record files, and critical assessment of opposing expert's data analysis. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Catherine Palmer et. al. v KCI USA**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Nebraska |
| Client: | KCI, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Wireless Identification, ascertaining class members, wrong number identification, consent identification. Provided deposition testimony. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Comprehensive Health Care Systems of the Palm Beaches et. al. v M3 USA Corporation**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida, West Palm Beach Division |
| Client: | M3 USA Corp., as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of fax telephone numbers. Also developed expert report rebutting opposing expert's opinions regarding successful completion of fax transmissions and identification of fax recipients. Provided deposition testimony. |
| Represented by: | Sheppard Mullin Richter & Hampton LLP |

**Craig Cunningham v Health Plan Intermediaries Holdings, LLC**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Health Plan Intermediaries Holdings, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Engaged as consulting expert to analyze the wireless status of telephones numbers at issue and perform wireless telephone forensics. |
| Represented by: | Greenspoon Marder LLP |

**C. S. Wang et. al. v Wells Fargo Bank NA, et. al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Illinois |
| Client: | Wells Fargo Bank, Fifth Third Bank, First Data Merchant Services, Vantiv, Inc., National Processing Company, Ironwood Financial, LLC, John Lewis, Dewitt Lovelace, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed declaration rebutting opposing expert's methodology for ascertaining class members. Also developed declaration rebutting opposing expert's methodology for wireless identification and carrier subpoena process. |
| Represented by: | Polsinelli PC, Figliulo & Silverman PC, Baker Hostetler |

**Daniel Berman et. al. v Freedom Financial Network**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of California |
| Client: | Freedom Financial Network, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's ability to identify call recipients on the National Do Not Call Registry, opposing expert's flawed analysis of lead data names, and the feasibility and technical |

aspects of identifying users/subscribers of cell phones. Contributed to court's denial of class certification.

Represented by: Klein Moynihan Turco LLP

**Danielle Moraitis et. al. v Dent-A-Med, Inc.**

Jurisdiction: JAMS
Client: Dent-A-Med, as respondent
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Developed expert report rebutting opposing expert's ATDS analysis. Provided opinions on defendant's dialing equipment's capacity to generate random or sequential numbers, and capacity to dial numbers without human intervention.
Represented by: Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

**Datamaxx Applied Technologies v Computer Projects of Illinois, Inc.**

Jurisdiction: United States District Court, Northern District of Florida
Client: Datamaxx as plaintiff
Nature of Case: Software Copyright Infringement
Engagement: Prepared expert report assessing infringement of plaintiff's software copyrights, utilizing Abstraction-Filtration-Comparison test. Provided deposition testimony.
Represented by: Pennington, Moore, Wilkinson, Bell & Dunbar, P.A.

**Deborah Turner v USAA Savings Bank**

Jurisdiction: U.S. District Court, Western District of Arkansas
Client: USAA, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator.
Represented by: Benesch, Friedlander, Coplan & Aronoff LLP

**Derrick Thomas et. al. v Peterson's Harley Davidson**

Jurisdiction: U.S. District Court, Southern District of Florida
Client: Peterson's, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Provided expert report rebutting opposing expert's proposed methodology for identifying historic wireless status and historic users/subscribers of telephone numbers, and opposing expert's consent analysis. Also produced expert report addressing the dialing system used by Defendant for text message campaigns, and its capacity to perform as an ATDS.
Represented by: Robert L. Switkes & Associates, P.A.

**Derrick Virgne et. al. v C. R. England, Inc.**

Jurisdiction: U.S. District Court, Southern District of Indiana
Client: C. R. England, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation

Nature of Engagement: Provided declaration with statistical analysis of text message interactions between Defendant and customers, including Stop requests and messages after Stop requests. Provided deposition testimony.
Represented by: Benesch Friedlander Coplan and Aranoff LLP

**Diana Mey et. al. v United Enrollment Service LLC, et.al.**
Jurisdiction: U.S. District Court, Southern District of Florida
Client: United Enrollment Services, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Provided expert report rebutting opposing expert's ability to identify: violations of the National Do Not Call Registry; calls that received prerecorded voice messages; and names of users/subscribers associated with class-eligible telephone numbers. Provided deposition testimony.
Represented by: Roth Jackson Gibbons Condlin, PLC

**Donna Carpenter v World Omni Financial Corp.**
Jurisdiction: American Arbitration Association
Client: World Omni, as respondent
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Engaged as consulting expert to opine on whether defendant's dialing equipment has the characteristics of an ATDS.
Represented by: Akerman LLP

**Eileen Nece et. al. v Quicken Loans, Inc.**
Jurisdiction: U.S. District Court, Middle District of Florida
Client: Quicken Loans, Inc. as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones and residential landlines.
Represented by: Goodwin Procter LLP

**Eric Gruber et. al. v Yelp, Inc.**
Jurisdiction: Superior Court of the State of California
Client: Yelp, Inc. as defendant
Nature of Case: California Invasion of Privacy (CIPA) violation
Engagement: Developed expert report rebutting two of plaintiff's experts regarding: wireless identification; identification of forwarded calls; data analysis errors; identification of users/subscribers associated with class eligible telephone numbers; barriers to issuing subpoenas to telephone carriers; identification of the physical location of call recipients. Provided deposition testimony.
Represented by: Reed Smith LLP

**Estrellita Reyes et. al. v BCA Financial Services, Inc.**
Jurisdiction: United States District Court, Southern District of Florida

Client: BCA Financial Services as defendants
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Developed expert rebuttal report challenging opposing expert's data analysis methodology, and addressing technical aspects of identifying users/subscribers of cell phones. Provided deposition testimony.
Represented by: Shepard, Smith, Kohlmyer & Hand, P.A.

**Forrest Rogers et. al. v Navient Solutions LLC**

Jurisdiction: United States District Court, Eastern District of Virginia
Client: Navient as defendants
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Developed draft expert rebuttal report challenging opposing expert's data methodology of identifying users/subscribers of cell phones.
Represented by: Holland & Knight LLP

**Grace Howerton v USAA Savings Bank**

Jurisdiction: American Arbitration Association
Client: USAA Savings, as respondent
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator.
Represented by: Benesch, Friedlander, Coplan & Aronoff LLP

**Israel Garcia et. al. v Target Corporation**

Jurisdiction: U.S. District Court, District of Minnesota
Client: Target, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Provided affirmative report addressing the challenges to identifying historic users and subscribers of telephone numbers. Also produced an expert report rebutting opposing expert's analysis of Defendant's dialing system.
Represented by: Barnes & Thornburg LLP

**Janet Hill v USAA Savings Bank**

Jurisdiction: American Arbitration Association
Client: USAA Savings, as respondent
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. Contributed to Arbitrator's finding that Defendant's dialer does not constitute an ATDS.
Represented by: Benesch, Friedlander, Coplan & Aronoff LLP

**Janet Morris, et. al. v Lincare, Inc.**

Jurisdiction: U.S. District Court, Middle District of Florida

Client: Lincare, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Developed expert report rebutting opposing expert's opinions on alleged use of Prerecorded Voice, FTSA, Consent/EBR, Avaya call record analysis. Provided deposition testimony.
Represented by: Shumaker, Loop & Kendrick, LLP

**Jed Iverson et. al. v Advanced Disposal Services.**

Jurisdiction: U.S. District Court, Middle District of Florida
Client: ADS, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Provided expert rebuttal reports disputing opposing expert's ability to identify class members based on Five9 call records and defendant's customer data. Analyzed and documented potential customer consent appearing in customer account records and audio recordings. Provided deposition testimony.
Represented by: Burr & Forman, LLP; Holland & Knight, LLP

**Jerry Eisenband et. al. v Schumacher Automotive, Inc.**

Jurisdiction: U.S. District Court, Southern District of Florida
Client: Schumacher, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Provided expert analysis of Plaintiff's expert report, and analysis of systems used to send alleged SMS text messages.
Represented by: Kurkin Forehand Brandes LLP

**John Scherkanowski v Bluegreen Vacations**

Jurisdiction: U.S. District Court, District of New Hampshire
Client: Bluegreen, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Developed expert report analyzing Defendant's dialing system, it's capacity to store or produce telephone numbers using a random or sequential number generator, its capacity to place calls without human intervention, and the use an artificial or prerecorded voice.
Represented by: Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

**Joseph Mantha, et. al. v QuoteWizard.com**

Jurisdiction: U.S. District Court, District of Massachussetts
Client: QuoteWizard, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Developed affirmative and rebuttal expert reports addressing ability to identify violations of the National Do Not Call Registry, identification of business vs. residential telephone numbers, and consent evidence from Active Prospect Trusted Form Certificates and Jornaya Guardian TCPA Reports.
Represented by: Nelson Mullins Riley & Scarborough, LLP.

**Julie Smith v USAA Savings Bank**

Jurisdiction: U.S. District Court, District of Colorado
Client: USAA, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator.
Represented by: Benesch, Friedlander, Coplan & Aronoff LLP

**Karen Saunders et. al. v Dyck O'Neal, Inc.**
Jurisdiction: U.S. District Court, Western District of Michigan
Client: DONI, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Developed expert report addressing the ability to identify the recipients of Direct Dial Voicemail messages, and the ability to identify consent based on Defendant's records.
Represented by: Golden Scaz Gagain, PLLP

**Kathryn Kalmbach et. al. v National Rifle Association and InfoCision, Inc.**
Jurisdiction: Superior Court of Washington, King County
Client: InfoCision, Inc. as defendant
Nature of Case: Washington Automatic Dialing and Announcing Device (WADAD) violation
Engagement: Provided expert consulting regarding carrier record content and retention, carrier subpoena responses, and identification of wireless/landline subscribers and calls within specific geographic boundaries.
Represented by: Baker & Hostetler LLP

**Keith Snyder et. al. v U.S. Bank et. al.**
Jurisdiction: U.S. District Court, Northern District of Illinois
Client: Deutsche Bank, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Provided analysis of Defendant's dialing system as it relates to TCPA's definition of an ATDS.
Represented by: Morgan, Lewis & Bockius LLP

**Kenneth Albrecht et. al. v Oasis Power**
Jurisdiction: U.S. District Court, Northern District of Illinois
Client: Oasis Power, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Provided expert consulting including data analysis of ringless voicemail data records, and identification of historic wireless subscribers of telephone numbers.
Represented by: Morgan, Lewis & Bockius LLP

**Kenneth Johansen et. al. v Bluegreen Vacations**
Jurisdiction: U.S. District Court, Southern District of Florida
Client: Bluegreen, as defendant

| | |
|---|---|
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert consulting including reliability analysis of call records, data analysis of call records, analysis of express business relationships, and description of barriers to identification of historic wireless subscribers of telephone numbers. Provided deposition testimony. Contributed to denial of class certification. |
| Represented by: | Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. |

**Kevin Buja et. al. v Novation Capital LLC, et. al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida, West Palm Beach Division |
| Client: | Novation, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC violations, and addressing technical aspects of identifying users/subscribers of cell phones. Provided deposition testimony. |
| Represented by: | Vedder Price, P.C. |

**Lance Mancuso v USAA Savings Bank**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Nevada |
| Client: | USAA, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. Provided deposition testimony. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Laura Ackerman et. al. v Look Both ways Insurance, et. al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Eastern District of Virginia |
| Client: | Look Both Ways, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Analysis of Pre-recorded calls, NDNCR, consent, EBR, Lead gen, health insurance |
| Represented by: | Day Pitney LLP |

**Lorenzo Quintana et. al. v Branch Banking and Trust**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of North Carolina |
| Client: | BB&T, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert report addressing dialing equipment's capability to store or produce telephone numbers using a random or sequential number generator. Contributed to the award of summary judgment to defendant based on lack of number generation. |
| Represented by: | Womble Bond Dickinson LLP |

**Lori Shamblin et. al. v Obama for America et. al.**

Jurisdiction: United States District Court, Middle District of Florida, Tampa Division
Client: Obama for America and DNC Services Corp. as defendants
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Extensive review and critique of plaintiff's expert witness reports; data analysis and research of very large call-record databases, alleged call violations and ported telephone numbers; and ATDS evaluation. Preparation of expert report in support of defendant, contributing to denial of class certification and judgment in favor of defendants.
Represented by: Perkins Coie LLP

**Louis Floyd et. al. v National Payment Systems, et. al.**

Jurisdiction: United States District Court, Northern District of California
Client: NPS, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Analysis of lead data, analysis of call records, wireless identification of telephone numbers.
Represented by: Wilson Elser Moskowitz Edelman & Dicker LLP

**Marc Schaevitz et. al. v Braman Hyundai, Inc.**

Jurisdiction: United States District Court, Southern District of Florida
Client: Braman Hyundai, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Technical comparison of Ringless Voicemails to voice calls, analysis of lead and call data, contributing to denial of class certification. Provided deposition testimony.
Represented by: Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

**Mark Preman et. al. v Pollo Operations**

Jurisdiction: United States District Court, Middle District of Florida, Orlando Division
Client: Pollo Operations as defendants
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Pre-trial review of text messaging procedures and data flow analysis. Provided expert report evaluating adherence to CTIA/Wireless Industry best practices for short code messaging campaigns.
Represented by: Akerman LLP

**Matthew Dickson et. al. v Direct Energy, LP et. al.**

Jurisdiction: United States District Court, District of Ohio
Client: Direct Energy as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Provided expert report addressing the reliability of Ringless Voicemail call records, rebutting opposing expert's historical wireless analysis, class identification using audio recordings, and identification of users associated with given telephone numbers. Investigated significant evidence of lead generation, website landing pages and customer consent. Contributed to granting of defendant's Motion to Dismiss.
Represented by: McDowell Hetherington LLP

**Michael Anthony, et. al. v The Federal Savings Bank, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Northern District of Illinois |
| Client: | The Federal Savings Bank as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Rebuttal of opposing expert's proposal to identify National Do Not Call violations, and Prerecorded message violations. Provided deposition testimony. |
| Represented by: | Mitchell Sandler LLP |

**Michael Lutman v Harvard Collection Services**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida, Ft Myers Division |
| Client: | Harvard Collection Services as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert analysis of plaintiff telephone numbers, porting activity, subscriber information, and ATDS evaluation. |
| Represented by: | Wilson Elser Moskowitz Edelman & Dicker LLP |

**Mildred Baldwin et. al. Miracle-Ear, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Minnesota |
| Client: | Miracle-Ear as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed draft expert rebuttal report evaluating the reliability of call records, challenging opposing expert's data methodology of identifying users/subscribers of cell phones, and identification of DNC and Pre-recorded message classes |
| Represented by: | Faegre Drinker Biddle & Reath LLP |

**Monifa Grant et. al. v Regal Automotive Group**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | Regal Automotive Group, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert analysis of discrepancies between Defendant's subscriber records and subscriber/user records returned from commercial identification vendor. |
| Represented by: | Golden Scaz Gagain PLLP |

**Monique Jackson et. al. v Palm Beach Credit Adjustors**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Florida |
| Client: | Palm Beach Credit, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Engaged as consulting expert to opine on ability to ascertain class members based on telephone numbers, and analyze evidence of consent and revocation. |
| Represented by: | Shepard, Smith, Kohlmyer & Hand, P.A. |

**Moricz v Google**

Jurisdiction: United States District Court, Western District of Washington at Seattle
Client: Michael Moricz as plaintiff
Nature of Case: Patent infringement of search engine software capabilities
Engagement: Provided technical research into history, evolution and current state of web-based search engine design and functionality. Development of claim construction report.
Represented by: Schwabe, Williamson & Wyatt, P.C.

**Nathan Rowan, et. al. v United Enrollment Services LLC**

Jurisdiction: United States District Court, Southern District of Florida
Client: United Enrollment as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Analysis of Florida Telephone Solicitation, Text messages, message search strings, and location of text recipients.
Represented by: Roth Jackson Gibbons Condlin, PLC

**Paramjit Lalli, et. al. v First Team Real Estate**

Jurisdiction: United States District Court, Central District of California
Client: First Team as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Analysis of real estate dialers, call record analysis to identify calls leaving prerecorded messages, identification of consent.
Represented by: Payne & Fears LLP

**Patrick Rose, et. al. v New TSI Holdings, Inc.**

Jurisdiction: United States District Court, Southern District of New York
Client: New TSI as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Provided Expert Rebuttal Report addressing reliability of Sneeze-It call records, wireless identification, consent analysis, ascertainability of class members.
Represented by: Gordon Rees Scully Mansukhani, LLP

**Phillip Charvat, et. al. v The Southard Corp.**

Jurisdiction: United States District Court, Southern District of Ohio
Client: The Southard as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Identification of National DNC Registry violations, Ascertainability of class members
Represented by: Baker & Hostetler, LLP

**PCS4Less v Go Mobile**

Jurisdiction: State of Michigan, Circuit Court for Washtenaw County
Client: Go Mobile as defendant
Nature of Case: Copyright / Trade Secret on unlocking GSM/CDMA cell phone devices
Engagement: Provided expert analysis of cell phone unlocking methods.

Represented by: Gray Robinson

**Ranier Sapuy, et. al. v Roosevelt Field Mall Dental, PC, Stomatcare DSO, LLC, et. al.**

Jurisdiction: United States District Court, Eastern District of New York
Client: Roosevelt Field Mall Dental and Stomatcare DSO, as defendants
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Expert rebuttal report addressing: applicability of text message stop requests to subsequent prerecorded voice calls; existence of consent within prerecorded call responses; reliability of call records; identification of calls that pertain to defendants; identification of users/subscribers associated with class-eligible telephone numbers
Represented by: Nixon Peabody LLP

**Resource Acquisition and Management Services v Mathews**

Jurisdiction: State of Florida, Circuit Court for Hillsborough County
Client: Resource Acquisition and Management Services, Inc. as plaintiff
Nature of Case: Breach of Contract and Conversion of disputed property including application source code
Engagement: Provided expert report assessing the value of application source code. Provided deposition testimony.
Represented by: Rocke, McLean and Sbar, P.A.

**Richard Witvoet, et. al. v Pat Tumilty**

Jurisdiction: U.S. District Court, Northern District of California
Client: Pat Tumilty, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Provided Expert Rebuttal report addressing ability to identify completed calls and delivered text messages, identification of calls in violation of the national Do Not Call registry, and consent analysis.
Represented by: Riley Safer Holmes & Cancila LLP

**Ronald Chinitz, et. al. v Mojo Dialing Solutions, et. al.**

Jurisdiction: U.S. District Court, Northern District of California
Client: Mojo, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Analysis of pre-recorded message call records, Identification of National DNC Registry violations, Ascertainability of class members, express business relationships and prior consent, identification of business vs. residential telephone numbers, analysis of dialing platform used by real estate agents. Contributed to denial of class certification for defendant Mojo. Provided deposition testimony.
Represented by: Day Pitney LLP

**Samantha Grome v USAA Savings Bank**

Jurisdiction: U.S. District Court, District of Nebraska
Client: USAA Savings, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation

| | |
|---|---|
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. Provided deposition testimony. Contributed to court's granting of summary judgment in favor of Defendant. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Sara Diaz-Lebel et. al. v TD Bank and Target Corporation**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Minnesota |
| Client: | Target, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's analysis of call records. Also provided analysis of Defendant's dialing system as it relates to TCPA's definition of an ATDS, as well as describing the restrictions to accurately ascertaining class members based on historic call data. |
| Represented by: | Barnes & Thornburg LLP |

**Shehan Wijesinha et. al. v Bluegreen Vacations**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Bluegreen Vacations, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's identification of historical users/subscribers. Also provided analysis of Defendant's dialing system as it relates to TCPA's definition of an ATDS, as well as describing the restrictions to accurately ascertaining class members based on historic call data. Provided deposition testimony. |
| Represented by: | Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. |

**Sherry Clemons, et. al. v O'Neil Insurance Agency and State Farm**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Eastern District of Missouri |
| Client: | O'Neil Insurance, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's: lack of identification of telemarketing calls; vendor usage for identifying National Do Not Call registrations; identification of business vs. residential telephone numbers; identification of consent and established business relationships; and recognition of forwarded calls. |
| Represented by: | Riley Safer Holmes & Cancila LLP |

**State of Florida v Poole**

| | |
|---|---|
| Jurisdiction: | State of Florida, Circuit Criminal Court for Hillsborough County |
| Client: | Poole as defendant |
| Nature of Case: | Criminal complaint involving damage of application components |
| Engagement: | Provided expert analysis and court testimony regarding the feasibility of performing a forensic analysis of hardware and software components. Provided court testimony. |
| Represented by: | Pawuk and Pawuk, P.A. |

**Stephanie Powers et al. v Receivables performance Management**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Massachusetts |
| Client: | RPM as defendant |
| Nature of Case: | Massachusetts Consumer Protection Act, Massachusetts Debt Collection Regulations |
| Engagement: | Provided expert analysis of LiveVox call record reliability, business vs. residential analysis, location of call recipients, identification of harm or injuries. Provided deposition testimony. |
| Represented by: | Gordon Rees Scully Mansukhani, LLP |

**Steven Sandoe et. al. v Boston Scientific Corporation**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Massachusetts |
| Client: | Boston Scientific, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert rebuttal report challenging opposing expert's data analysis, identification of wrong number calls, identification of National DNC Registry violations, and identification of historic users/subscribers of telephone numbers. Provided deposition testimony. Directly contributed to Denial of Class Certification. |
| Represented by: | Faegre Baker Daniels LLP |

**Thomas Cook et. al. v Palmer, Reifler & Associates and WALMART**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | PRA as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert rebuttal report challenging opposing expert's data analysis, and addressing technical aspects of identifying users/subscribers of cell phones. Provided deposition testimony. |
| Represented by: | Shepard, Smith, Kohlmyer & Hand, P.A. |

**Toya Green-Mobley v Capital One Auto Finance**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | COAF as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert rebuttal report address qualification of Defendant's calling system as an ATDS, including capacity to generate telephone numbers, use of human intervention, and the pre-recorded nature of phone messages. Provided deposition testimony. |
| Represented by: | Burr & Forman LLP |

**Victoria Wilson et. al. v Badcock Home Furniture**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | Badcock as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert rebuttal report challenging opposing expert's data analysis and methodology for identifying users/subscribers of cell |

| | |
|---|---|
| | phones, contributing to denial of class certification. Provided deposition testimony. |
| Represented by: | Johnson & Cassidy, P.A. |

**Waddell Williams et. al. v Bluestem Brands**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | Bluestem Brands as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert report analyzing Defendant's dialing platform and its characteristics related to Automated Telephone Dialing Systems. |
| Represented by: | Faegre Baker Daniels, LLP |

**Weronika Rechul et. al. v Crisp Marketing LLC**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Florida |
| Client: | Crisp as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Wireless identification, pre-recorded voice delivery, consent analysis, analysis of TrustedForm certificates |
| Represented by: | Womble Bond Dickinson, LLP |

**Exhibit B – Deposition excerpt of John Keep**

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF FLORIDA

ANGELA GURZI, Plaintiff,

-vs- No. 6:19-CV-00823

PENN CREDIT CORPORATION, Defendant.

THE DEPOSITION OF JOHN KEEP, produced, sworn and examined on the part of the Plaintiff, pursuant to Notice of Deposition on Friday, the 6th of December, 2019, at the law offices of Heritage Reporting Service, 111 W. 10th Street, in the City of Kansas City, County of Jackson and State of Missouri, before me,

BRENDA FITZGERALD, CCR No. 520
of
HERITAGE REPORTING

a Certified Court Reporter, in a certain cause now pending In the United States District Court, for the Middle District of Florida,, wherein ANGELA GURZI is Plaintiff and PENN CREDIT CORPORATION is Defendant.

A P P E A R A N C E S:

For Plaintiff:

BURKE LAW OFFICES, LLC
155 N. Michigan Avenue
Suite 9020
Chicago, Illinois 60601
By: Mr. Alexander H. Burke

For Defendant:

GOLDEN SCAZ GAGAIN
201 N. Armenia Avenue
Tampa, Florida 33609
By: Mr. Dale Golden

A The timeframe searched is actually the date supplied in the second column, so each row has a specific timeframe, a specific date and time that was searched.

Q All right. So if we go down to the first actual entry that came back with a number, a Sprint number, it's about five or six down, so the date searched would have been on 12-18-18; is that correct?

A That's right.

Q With respect to the prepaid phones, are you able to tell me what percentage of Sprint accounts or Sprint numbers are associated with prepaid accounts on any given time?

A I'm sorry, I don't know that.

Q Do you know who would know that?

A Not off of the top of my head. That might be publicly available data as part of maybe an earnings report.

Q Okay. We'll try to find it.

A If not -- I'm assuming --

Q Do you have any idea what percentage it would be?

A I really don't, I'm sorry.

Q That's fair, that's fair. If I understand

correctly, with respect to the prepaid accounts Sprint doesn't know whether the subscriber information it received is accurate?

A That's correct.

Q And it doesn't do anything to verify the accuracy of the information provided?

A Also correct.

Q In terms of the user name, again, if I -- I want to make sure we're all on the same page in terms of understanding.

Subscriber is the person who owns the account who is liable for the bill; correct?

A That's right.

Q And a user would be anyone other than the subscriber who is included in that account?

A It could actually be both. The user name doesn't need to be updated but typically if you were to have, say, a college age students they are not, you know, as commonly responsible for their own phone purchases and payments so parents would typically have a phone provided to them and then have that child set up as the user name.

Q You're preaching to the choir on that.

So the subscriber would naturally be a user; correct?

A The subscriber would be -- well, the subscriber could be a user on the account. They don't need to be but they could be.

Q And but a user -- let's use an example.

So I have a family plan, okay, and I have a cell phone number and I'm liable for the bill and so I would in that situation be both a subscriber and a user; correct?

A That's right.

Q Okay, so I have two daughters in college and they both have phones but they are not liable for the bill so they would just be users; correct?

A That's right.

Q And so in terms of finding and identifying users, does Sprint depend on the subscriber to provide user information?

A Yes.

Q Because if I get a family plan for whatever reason I don't have to provide the names of those people who are going to be using the phone; correct?

A That's right.

Q It's a voluntary process?

A Correct.

Q And do you know of the family plans what